JUDY ST. JOHN, Plaintiff, v. TAMMY BRANTLEY, Defendant; JUDY ST. JOHN, Plaintiff, v. VICKY BRANTLEY, Defendant

No. COA11-635; NO. COA11-643[1]

(Filed 20 December 2011)

### 1. Evidence—prior crimes or bad acts—relevancy

The trial court did not err in a stalking case by considering defendants' actions prior to 10 December 2010 because they were taken with knowledge of plaintiff's role in the charges against Tammy Brantley and were highly relevant.

### 2. Stalking—civil no-contact order—engaging in criminal behavior

Although not required for issuance of a civil no-contact order, the trial court did find that defendants engaged in criminal behavior toward plaintiff.

### 3. Stalking—intimidating witness—harassment—unlawful conduct

Defendants' actions to intimidate plaintiff, a witness in a pending criminal case, were harassment under N.C.G.S. § 14-277.3A(b)(2), which in turn constituted stalking and unlawful conduct.

### 4. Stalking—civil no-contact order—intimidating a witness—specific intent

The trial court did not err by concluding that intimidating a witness in a criminal trial encompassed all three definitions and fully reflected the specific intent required under N.C.G.S. § 50C-1(6) for a civil no-contact order.

### 5. Stalking—civil no-contact order—statutorily-required findings

The trial court made the required findings under N.C.G.S. § 50C-1(6) to enter the no-contact orders.

### 6. Evidence—prior crimes or bad acts—motive

The trial court did not err in a stalking case by considering the circumstances surrounding defendant Tammy Brantley's alleged assault on her sister and plaintiff's role in the subsequent

---

1. Pursuant to Rule 40 of the North Carolina Rules of Appellate Procedure and based on the identity of the legal issues raised, COA11-635 and COA11-643 are consolidated for decision on appeal.

criminal charges because it explained defendants' motive in harassing plaintiff.

Appeal by Defendants from orders entered 24 February 2011 by Judge Charles M. Vincent in Pitt County District Court. Heard in the Court of Appeals 28 November 2011.

*The Foster Law Firm, P.A., by Jeffery B. Foster, for Plaintiff.*

*Sutton Law Offices, P.A., by David C. Sutton, for Defendants.*

STEPHENS, Judge.

On 10 December 2010, Plaintiff Judy St. John filed complaints for civil no-contact orders against Defendants Tammy Brantley and Vicky Brantley, who are sisters. On the same date, the trial court issued *ex parte* temporary civil no-contact orders restraining Defendants from contacting or harassing Plaintiff. Following a hearing on 16 February 2011, on 24 February 2011, *nunc pro tunc* 16 February 2011, the court entered one-year civil no-contact orders against both Defendants.

At the request of Plaintiff, Defendants, and the State, the court heard the civil no-contact matters and a related misdemeanor criminal case against Tammy at the same time. The evidence tended to show the following: Plaintiff lives across the street from the home where Defendants live with their mother. Defendants had a volatile relationship with each other as reported by Plaintiff and other neighbors. On 23 September 2010, Plaintiff heard Tammy screaming at Vicky and threatening to kick her out of the house. Later that morning, Tammy came outside and began shouting about "[s]ocial [s]ervices" and said "that bitch across the street had called [social services,]" referring to Plaintiff. Plaintiff had not called the Pitt County Department of Social Services ("DSS") on that occasion, but did call on 24 September to report her concerns that Tammy was mistreating Vicky and might have been locking her out of their house overnight.

On 2 October 2010, Plaintiff looked out her front window and saw Tammy push her sister off their front porch. Tammy then began singing "Christian songs" loudly as she beat her sister with an object Plaintiff could not identify. Plaintiff called the Greenville Police Department ("GPD"), but could not wait for their arrival due to a doctor's appointment. As Plaintiff left for her appointment, she saw a neighbor who was planning to go to Defendants' home and tell them to be quiet. Plaintiff told him she had called police. As Plaintiff and

her neighbor spoke, Defendants were "screaming at [them]." On her way to the appointment, Plaintiff saw several other neighbors who had heard the commotion, and Plaintiff also told them that she had already called police.

Plaintiff called a GPD detective about the incident a few days later. After speaking with Plaintiff, the detective obtained a warrant and arrested Tammy on 8 October 2010 for misdemeanor assault. Plaintiff's name did not appear on the warrant. Defendants denied any assault took place and the criminal charge was dismissed. The charge was reinstated on 8 November 2010, leading again to Tammy's arrest. Plaintiff was listed as the complainant on the second warrant, which was issued 10 December 2010.

Plaintiff testified that after her call to police, Defendants began harassing her. On 3 October, Plaintiff received a message on her Facebook account with the subject line, "Did you know you are committing a sin?" On 11 October, Vicky came to Plaintiff's home and threatened to sue Plaintiff for libel. Vicky also reported that a police officer had told Defendants that Plaintiff had a recording of the 2 October assault. Plaintiff responded that she did not have a recording, but had given police a statement about the assault. On 12 October, Vicky returned to Plaintiff's home to tell her she knew Plaintiff was going to testify against Tammy. Later that day, both Defendants came to Plaintiff's house. They told Plaintiff they had seen young men on her carport, knew who the men were but would not identify them to Plaintiff, and stated they did not want Plaintiff to think Defendants were responsible if anything in Plaintiff's carport was damaged. Plaintiff believed that Defendants were planning to vandalize her property and wanted to plant a false cover story about the alleged young men. Plaintiff planned to have motion-sensor lights installed outside her home and moved her grill from her porch because she feared Defendants might use it to set her house on fire.

On 10 December, Vicky rang Plaintiff's doorbell. When Plaintiff would not answer, Tammy pounded on the door and yelled loudly at Plaintiff. Later that day, Tammy returned, screaming "I know you're in there," and pounding on Plaintiff's door until pictures on the wall shook. Plaintiff testified, "I believe if I had opened the door she would have pushed through and beat me." On 11 December, Tammy knocked on Plaintiff's door again and when Plaintiff refused to answer, Tammy stood on Defendants' porch and screamed loudly about committing suicide. The following day, Tammy followed Plaintiff in her car when Plaintiff was running errands. Plaintiff testified she did "not feel safe"

and stated, "I think if I go outside, except to get in my car, Tammy will try to harm me."

In each of the orders, the trial court made detailed findings of fact about the behaviors Defendants engaged in against Plaintiff, as well as the criminal charges Tammy faced and Plaintiff's role as a witness in that matter. The court specifically found that Defendants' behavior "constitute[d] the unlawful conduct of intimidating a witness in a pending criminal case[.]" Based on these findings, the court concluded that Defendants "committed acts of unlawful conduct against [P]laintiff." Defendants appeal, arguing that the trial court erred in entering the no-contact orders. We disagree and affirm.

## Discussion

"A trial judge, sitting without a jury, acts as fact finder and weigher of evidence. Accordingly, if [the court's] findings are supported by competent evidence, they are binding on appeal, although there may be evidence that may support findings to the contrary." *S. Bldg. Maint. v. Osborne*, 127 N.C. App. 327, 331, 489 S.E.2d 892, 895 (1997) (citation omitted). Here, Defendant does not challenge the content of any findings of fact, and thus, they are binding on appeal.

"Upon a finding that the victim has suffered unlawful conduct committed by the respondent, the court may issue temporary or permanent civil no-contact orders as authorized in this Chapter." N.C. Gen. Stat. § 50C-5(a) (2009). Two types of "unlawful conduct" can support the entry of a civil no-contact order under section 50C-5(a): nonconsensual sexual conduct[2] or stalking. N.C. Gen. Stat. § 50C-1(7) (2009). The statute further defines stalking as

[o]n more than one occasion, following or otherwise harassing, as defined in G.S. 14-277.3A(b)(2) [the criminal stalking statute], another person without legal purpose with the intent to do any of the following:

a. Place the person in reasonable fear either for the person's safety or the safety of the person's immediate family or close personal associates.

b. Cause that person to suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment and that in fact causes that person substantial emotional distress.

---

2. Here, there are no allegations of sexual conduct by Defendants.

N.C. Gen. Stat. § 50C-1(6). This Court has emphasized that entry of a civil no-contact order requires not only findings of fact that show the defendant harassed the plaintiff, but also that the "defendant's harassment was accompanied by the specific intent" described in section 50C-1(6)(a) or (b). *Ramsey v. Harman*, 191 N.C. App. 146, 149, 661 S.E.2d 924, 926 (2008). As for behavior that constitutes harassment, section 50C-1(6) refers to the definition contained in our criminal stalking statute: "Knowing conduct . . . directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose." N.C. Gen. Stat. § 14-277.3A(b)(2) (2009).

## Relevancy of Findings

[1] Defendants first argue that most of the court's findings are irrelevant because they pertain to Defendants' actions prior to 10 December 2010 when the second warrant for Tammy's arrest was issued. We disagree.

Because Plaintiff's name did not appear on the first warrant, issued on 8 October 2010, Defendants contend they could not have known Plaintiff would be a witness against Tammy and thus cannot have been harassing her for purposes of witness intimidation. However, at the hearing, Plaintiff testified that she told Vicky on 11 October that she had called the police and made a written report about the assault. In addition, as the court found in finding of fact 7, the following day, Vicky told Plaintiff that Defendants knew Plaintiff was going to testify against them. Thus, Defendants' actions prior to 10 December were taken with knowledge of Plaintiff's role in the charges against Tammy and were highly relevant. This meritless argument is overruled.

## Requirement of Criminal Conduct by Defendants

[2] Defendants next argue that because Plaintiff did not testify that Defendants committed "criminal conduct" against her, Defendants cannot have engaged in "unlawful conduct" as required for issuance of a civil no-contact order. As noted *supra*, "unlawful conduct" under section 50C-1(a) does not require commission of a crime against a plaintiff. Instead, "unlawful conduct" includes harassment which the defendant intends to cause the plaintiff "reasonable fear" for her safety or "substantial emotional distress[.]" N.C. Gen. Stat. § 50C-1(6). Further, we note that in unchallenged finding of fact 16, the court found that Defendants' behavior "constitute[d] the unlawful conduct of intimidating a witness in a pending criminal case," which is a Class

H felony in this State. N.C. Gen. Stat. § 14-226(a) (2009). Thus, although not required for issuance of a civil no-contact order, the trial court here *did* find that Defendants engaged in criminal behavior toward Plaintiff.[3] This meritless argument is overruled.

### Statutory Basis for Civil No-contact Orders

[3] Defendants also argue that "intimidating a witness in a pending criminal case" does not fall into either of the two categories of behavior defined as unlawful conduct sufficient to support entry of a civil no-contact order. We disagree.

As discussed above, under Chapter 50C, unlawful conduct includes stalking, *see* N.C. Gen. Stat. § 50C-1(7), which in turn includes harassment as defined in our criminal stalking statute. See N.C. Gen. Stat. § 50C-1(6). The criminal stalking statute defines harassment as "[k]nowing conduct . . . directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose." N.C. Gen. Stat. § 14-277.3A(b)(2). We hold that, although Chapter 50C does not specifically use the term "witness intimidation," the definitions of "unlawful conduct" contained therein are more than broad enough to encompass such behavior.

Here, Defendants' "knowing conduct" was directed at Plaintiff and terrorized her. In addition, not only was Defendants' conduct toward Plaintiff without any legitimate purpose, the trial court specifically found that Defendants undertook their course of conduct for an *illegitimate* and criminal purpose, to wit, to discourage Plaintiff from testifying in Tammy's pending criminal case. Thus, Defendants' actions to intimidate Plaintiff were "harassment" under section 14-277.3A(b)(2), which in turn constituted "stalking" and thus "unlawful conduct" under Chapter 50C. The plain language of Chapter 50C does not require *any* particular purpose behind a defendant's stalking or harassment, beyond an intent to frighten a plaintiff or cause her severe emotional distress. Nor does Chapter 50C require that the trial court use the term "harassment" or "stalking" in its findings of fact to support a civil no-contact order. Rather, the court need only find "that the victim has suffered unlawful conduct committed by the [defendant.]" N.C. Gen. Stat. § 50C-5(a). The court so found here. Accordingly, this meritless argument is overruled.

---

3. At the conclusion of the hearing, the trial judge remarked, "It's a wonder that they weren't charged with a felony of harassing or intimidating a witness." [T130]

*Specific Intent*

[4] In a related argument, Defendants assert that the court's findings that they "intimidate[d] a witness in a pending criminal case" were insufficient to support the no-contact orders because witness intimidation does not reflect the specific intent required of Defendants under section 50C-1(6). We disagree.

In making this contention, Defendants rely on *Ramsey, supra,* in which this Court reversed a civil no-contact order where the trial court found that the defendant had harassed the plaintiff, but made no findings about the defendant's intent. 191 N.C. App. at 148-49, 661 S.E.2d at 925-26. We held that a mere finding of harassment is insufficient because

> [t]he statute requires the trial court to further find [the] defendant's harassment was accompanied by the specific intent to either: (1) place the person in fear for their safety, or the safety of their family or close personal associates or (2) cause the person substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment and in fact cause that person substantial emotional distress.

*Id.* at 149, 661 S.E.2d at 926 (citing N.C. Gen. Stat. § 50C-1(6)).

Here, in contrast to *Ramsey,* the court found that Defendants intimidated Plaintiff because she was to be a witness in the criminal case against Tammy. "Intimidate" means "to make timid or fearful[,]" "inspire or affect with fear[,]" and "to compel action or inaction (as by threats)[.]" Webster's Third New International Dictionary (unabridged 2002). Intimidating a witness in a criminal trial, as the court found occurred here, encompasses all three of these definitions and fully reflects the specific intent required under section 50C-1 (6). This meritless argument is overruled.

*Lack of Required Findings*

[5] Defendants next argue that the trial court erred in entering the no-contact orders because the orders lacked statutorily-required findings. We disagree.

Defendants contend that the no-contact orders were erroneously entered because there were no findings that Plaintiff suffered substantial emotional distress and that the evidence would not support any such findings. However, under the statute, entry of a civil no-contact order is proper, not only based on findings that the plaintiff has

suffered substantial emotional distress, but also when a defendant harasses a person with the intent to "[p]lace the person in reasonable fear . . . for the person's safety[.]" N.C. Gen. Stat. § 50C-1(6)(a).

Here, Plaintiff testified in detail about her fear of Defendants, including, *inter alia*, that Plaintiff: (1) "believe[d] if I had opened the door [Tammy] would have pushed through and beat me[,]" (2) did "not feel safe[,]" and (3) worried that "if I go outside, except to get in my car, Tammy will try to harm me." In finding of fact 9, the court found that Plaintiff had installed motion-sensor lighting outside her home and moved her grill out of fear that Defendants were planning to vandalize or burn down her house. In finding of fact 11, the court found that when Defendants had pounded on Plaintiff's door and yelled at her, "Plaintiff was afraid[.]" In finding of fact 16, the court found that Defendants' actions were undertaken in order to intimidate Plaintiff because she planned to testify in Tammy's criminal trial. These findings comport with the statute's requirements and support entry of the no-contact orders. This meritless argument is overruled.

### Reliance on Inadmissible Evidence

**[6]** Defendants last argue that the court's findings about the circumstances surrounding Tammy's alleged assault on her sister were based on evidence barred by Rule 404(b). We disagree.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). Because Defendants did not object to Plaintiff's testimony about Tammy's assault on Vicky, they have waived their right to appellate review of this issue. Further, even if Defendants had preserved this issue, they would not prevail.

Under Rule 404(b),

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2009). Evidence about Tammy's assault on Vicky and Plaintiff's role in the subsequent criminal

charges explained Defendants' motive in harassing Plaintiff, and thus was not barred by Rule 404(b). Defendants' argument lacks merit and is overruled. The trial court's civil no-contact orders are

AFFIRMED.

Chief Judge MARTIN and Judge ELMORE concur.