DAVID A. TYLL, Plaintiff
v.
MICHELLE WILLETS, Defendant

No. COA13-105

Filed 20 August 2013

1. **Jurisdiction—subject and personal—no contact order**

 The trial court had subject matter and personal jurisdiction to enter a no contact order. N.C.G.S. § 50C-7 grants the trial court authority to issue a no-contact order and defendant answered plaintiff's complaint without raising personal jurisdiction.

2. **Domestic Violence—no contact order—definition of victim— sibling—no evidence of living together**

 The trial court did not err by finding that defendant, plaintiff's sister, is a person who may be a victim for purposes of a no contact order. The statutes provide a method of obtaining a no-contact order against another person when the relationship is not romantic, sexual, or familial, but a sibling relationship standing alone is not

**TYLL v. WILLETS**

[229 N.C. App. 155 (2013)]

included under the definitions. The record in this case did not disclose that plaintiff and defendant have ever lived together or been household members.

**3. Domestic Violence—no contact order—no statutory ground to support**

The trial court erred by concluding that plaintiff was entitled to issuance of a no-contact order where there was no evidence of a statutory ground to support the order. Plaintiff's claim was based entirely upon harassment, but, even if defendant's actions constituted harassment, plaintiff did not allege any facts sufficient to sustain a finding that defendant caused plaintiff to suffer substantial emotional distress.

Appeal by defendant from order entered 11 July 2012 by Judge Joe Buckner in District Court, Orange County. Heard in the Court of Appeals 22 May 2013.

*Michelle Willets, pro se defendant-appellant.*

*No appellee brief filed.*

STROUD, Judge.

Defendant appeals order requiring she have no contact with plaintiff. For the following reasons, we reverse.

### I. Background

"HAPPY FAMILIES ARE ALL ALIKE; every unhappy family is unhappy in its own way." Leo Tolstoy, *Anna Karenina* 3 (Melanie Hill & Kathryn Knight eds., Constance Garnett trans., 2005) (1875). The parties to this case are members of an unhappy family. Although the reasons for their unique unhappiness are not clear from the record before us, this case is one of the results. Plaintiff appears to be defendant's brother; from the record, they share the same mother. Without going into the sordid details, the record shows that this family is embroiled in a longstanding dispute about various personal issues. They have been involved in at least one other lawsuit involving a no-contact order related to these matters, wherein plaintiff obtained an order against defendant's "partner,"[1] Mr. Joey Berry.

---

1. The complaint refers to Mr. Berry as defendant's "partner[,]" so we shall as well, but from the record it appears he is defendant's husband and thus plaintiff's brother-in-law.

TYLL v. WILLETS

[229 N.C. App. 155 (2013)]

On or about 8 June 2012, plaintiff filed a complaint requesting a no-contact order for stalking or nonconsensual sexual conduct ("no-contact order") against defendant. Plaintiff alleged that

> [o]n May 23, 2012, the Honorable Judge Buckner ordered Joey Berry not to have contact with any members of my family, and to cease stalking and harassing us (case # 12 CV 000755) based on the numerous threatening emails he sent to me, my wife, my mother and my employer.
>
> As expected, his partner, Michelle Willets, is continuing the harassment through libel emails to my employer and mother.

Plaintiff then provided details and exhibits regarding defendant's "harassment[,]" including defendant's emails to his employer.

Defendant answered plaintiff's complaint, admitting some allegations and denying others. On 11 July 2012, the trial court entered a no-contact order against defendant finding that "defendant failed to . . . appear at this hearing and the allegations in the complaint are sufficient to justify a no-contact order for stalking or nonconsensual sexual conduct." Defendant appeals.

## II. No-Contact Order

Defendant's arguments to support her claim that the trial court erred are confusing and illogical, but then, so is plaintiff's complaint. We recognize that defendant has appealed *pro se*, but the rules of this Court apply equally to *pro se* litigants. *See Bledsoe v. County of Wilkes*, 135 N.C. App. 124, 125, 519 S.E.2d 316, 317 (1999) ("Furthermore, these rules[, the Rules of Appellate Procedure,] apply to·everyone -- whether acting *pro se* or being represented by all of the five largest law firms in the state."). We will consider defendant's arguments to the extent we are able to discern them, as some do have merit.

### A. Jurisdiction

[1] Defendant's brief generally challenges the trial court's jurisdiction. "Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question." *Cunningham v. Selman*, 201 N.C. App. 270, 281, 689 S.E.2d 517, 524 (2009) (citation and quotation marks omitted). In this case, North Carolina General Statute § 50C-7 grants the trial court authority to issue a no-contact order, so the trial court had subject matter jurisdiction. *See* N.C. Gen. Stat. § 50C-7 (2011) (stating that a trial court may issue a permanent civil no-contact order). As to

personal jurisdiction, defendant answered plaintiff's complaint without raising this issue, thus the trial court also had personal jurisdiction over defendant. *See* N.C. Gen. Stat. § 1A-1, Rule 12(h)(1) (2011) ("A defense of lack of jurisdiction over the person . . . is waived . . . if it is neither made by·motion under this rule nor included in a responsive pleading or an amendment thereof[.]"). As the trial court had subject matter and personal jurisdiction to enter the no-contact order, we next consider the order itself, as best we can, based upon defendant's brief.

B.  North Carolina General Statute § 50C-2

Defendant contests various portions of the trial court's no-contact order. Essentially, defendant contends that the trial court erred in finding that "the allegations in the complaint are sufficient to justify a no-contact order[.]"

> [W]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable *de novo*.

*Romulus v. Romulus*, ___ N.C. App. ___, ___, 715 S.E.2d 308, 311 (2011) (citations and quotation marks omitted).

North Carolina General Statute § 50C-2(a)(1) provides that

> An action is commenced under this Chapter by filing a verified complaint for a civil no-contact order in district court or by filing a motion in any existing civil action, by any of the following:
>
> > (1) A person who is a victim of unlawful conduct that occurs in this State.

N.C. Gen. Stat. § 50C-2(a)(1) (2011).

Therefore, in order for a no-contact order to be issued, there must be (1) "a victim" and (2) "unlawful conduct[.]" *Id.* Both "victim" and "unlawful conduct" are defined within North Carolina General Statute Chapter 50C, although not all of the terms which are necessary for the analysis of this claim are so defined. *Id.*; see N.C. Gen. Stat. § 50C-1 (7)-(8) (2011).

**TYLL v. WILLETS**

[229 N.C. App. 155 (2013)]

1. Victim

**[2]** A "[v]ictim" is "[a] person against whom an act of unlawful conduct has been committed by another person not involved in a personal relationship with the person as defined in N.C. Gen. Stat. § 50B-1(b)." N.C. Gen. Stat. § 50C-1(8) (2011). North Carolina General Statute § 50B-1(b) defines "personal relationship" as

> a relationship wherein the parties involved:
>
> (1) Are current or former spouses;
>
> (2) Are persons of opposite sex who live together or have lived together;
>
> (3) Are related as parents and children . . . or as grandparents and grandchildren . . . [;]
>
> (4) Have a child in common;
>
> (5) Are current or former household members; [or]
>
> (6) Are persons of the opposite sex who are in a dating relationship or have been in a dating relationship.

N.C. Gen. Stat. § 50B-1(b) (2011).

Thus, North Carolina General Statute § 50C-1 incorporates the definitions of "personal relationship" from North Carolina General Statute Chapter 50B and *excludes* them from the category of relationships upon which a Chapter 50C no-contact order can be premised. *See* N.C. Gen. Stat. § 50C-1(8). In doing so, Chapter 50C provides a method of obtaining a no-contact order against another person when the relationship is not romantic, sexual, or familial. *See* N.C. Gen. Stat. §§ 50B-1(b), 50C-1(8). But the sibling relationship, standing alone, is not included under the definitions in North Carolina General Statute § 50B-1(b). *See* N.C. Gen. Stat. § 50B-1.

Although it appears clear from the record that plaintiff and defendant are brother and sister, the record does not disclose that they have ever "lived together" or have been "household members[.]" N.C. Gen. Stat. § 50B-1(b)(2), (6). Defendant does challenge the plaintiff's entitlement to a no-contact order in her answer by her allegation that she and plaintiff were "former members of the same household[,]" but defendant failed to either sign or verify her answer. *See generally Schoolfield v. Collins*, 281 N.C. 604, 612, 189 S.E.2d 208, 213 (1972) ("There is nothing in the rules which precludes the judge from considering a verified

answer as an affidavit in the cause." (citation, quotation marks and brackets omitted)). We cannot assume that plaintiff and defendant have actually ever lived together in the absence of any evidence.

We realize that plaintiff and defendant, at some point, most likely did live in the same household, but not all biological brothers and sisters do. Thus, nothing in the record before us – a record which is certainly lacking in many regards – appears to support defendant's argument that plaintiff is not entitled to a no-contact order because he cannot be a "victim[.]" *See* N.C. Gen. Stat. §§ 50B-1(b), 50C-1(8), 50C-2(a)(1). We therefore cannot find that the trial court erred by finding that defendant is a person who may be a "victim[.]" *See* N.C. Gen. Stat. §§ 50C-1(8), 50C-2(a)(1).

2. Unlawful Conduct

**[3]** As noted above, there is a second requirement for issuance of a no-contact order: the defendant must commit "unlawful conduct[.]" N.C. Gen. Stat. § 50C-2(a)(1). This term incorporates many other terms which are defined by statute. *See, e.g.*, N.C. Gen. Stat. §§ 14-277.3A(b)(2), 50C-1(6)-(7) (2011). North Carolina General Statute § 50C-1(7) defines "[u]nlawful conduct" as "[t]he commission of . . . [n]onconsensual sexual conduct . . . [or] [s]talking." N.C. Gen. Stat. § 50C-1(7). As plaintiff does not allege nonconsensual sexual contact, we must decide whether defendant stalked plaintiff. *See id.*

"[S]talking" is defined as

> [o]n more than one occasion, following or otherwise harassing, as defined in G.S. 14-277.3A(b)(2), another person without legal purpose with the intent to do any of the following:
>
> a. Place the person in reasonable fear either for the person's safety or the safety of the person's immediate family or close personal associates.
>
> b. Cause that person to suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment and that in fact causes that person substantial emotional distress.

N.C. Gen. Stat. § 50C-1(6) (2011). There are no specific allegations that defendant has "follow[ed]" or endangered plaintiff's "safety" or that of plaintiff's "immediate family or close personal associates[,]" so plaintiff's

claim is based entirely upon "harass[ment]" and "substantial emotional distress" placing plaintiff "in fear of . . . continued harassment[.]"[2]

Even if we assume *arguendo* that defendant did at least "harass" plaintiff in the sense that her communications were "annoying" or "pestering" to plaintiff, *see Watson*, 169 N.C. App. 331, 337, 610 S.E.2d 472, 477 (2005), plaintiff must also prove that defendant either (1) intended to place plaintiff "in reasonable fear" for his or his family's safety or (2) intended to and in fact caused plaintiff "to suffer substantial emotional distress[.]" N.C. Gen. Stat. § 50C-1(6)(b). Neither North Carolina General Statutes Chapter 50B or 50C define "substantial emotional distress[;]" however, North Carolina General Statute § 14-277.3A, entitled "[s]talking" defines "[s]ubstantial emotional distress" as "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." N.C. Gen. Stat. § 14-277.3A(b)(4).

Again, the record leaves us with just the allegations of plaintiff's complaint. Plaintiff's specific allegations are:

1.  May 23rd, 9:19am, during the previously mentioned hearing [, referring to the proceeding against Joey Berry,] Michelle Willets sent an email to my employer stating, "I am not sure why David is encouraging all the potential negative, as outlined in that email [May 7th, by Joey Berry] on himself and the school..." (see attached emails dated May 23rd and May 7th)

2.  May 25th, Michelle Willets stated in an email to my mother that, "This restraining order didn't change Joey's nature at all. It just means that he can't warn David and Jenny about any possible problems." (see attached email dated May 25th)

---

2. North Carolina General Statute § 14-277.3A(b)(2) defines "[h]arasses or harassment" as "[k]nowing conduct . . . directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose." N.C. Gen. Stat. § 14-277.3A(b)(2). This Court has previously noted that "[s]everal of these words are of common usage and their plain meaning should be given. 'Torment' is defined as 'to annoy, pester, or harass.' 'Terrorize' is defined as 'to fill or overpower with terror; terrify.' " *State v. Watson*, 169 N.C. App. 331, 337, 610 S.E.2d 472, 477 (2005) (citations omitted). Unfortunately, these definitions are recursive, as "harass" is statutorily defined as "torments, terrorizes, or terrifies" while the definition of "[t]orment" is "harass" and "terrorize" is defined as to "terrify." N.C. Gen. Stat. § 14-277.3A(b)(2); *Watson*, 169 N.C. App. at 377, 610 S.E.2d at 477. We will not seek to untangle this definitional Gordian Knot.

3.  May 29th, our lawyer, Ann Marie Vosburg, sent Michelle Willets a letter on our behalf stating our desire for no contact with her. It stated, "Any contact from you to them or to any individuals regarding them, and especially to any employers of either of them will be perceived as harassment and they will be forced to seek legal action against you." (see attached letter dated May 29th)

4.  June 7th, Michelle Willets sent a lengthy and defamatory email (see attached, dated June 7th) to my employer, as previously threatened by Joey Berry in the attached email dated May 7th. She carries out Joey Berry's previous threat to share "deeply personal information" that "may even call into question David's fitness to be around children (much less supervise them)."

5.  In the June 7th email, Michelle Willets references, "struggling on whether to contact Social Services based on this concern and others." While she has no grounds for such an intervention, we see this statement as an intended threat to our family, and seek relief from her continued harassment.

6.  I am concerned that Michelle Willets and Joey Berry will continue to attempt to torment and harass us through any means possible, given statements by them such as, "This (contacting my employer) is the tip of the iceberg of what we are willing to do." (May 7th phone conversation with David Tyll)

7.  Since Michelle Willets has disregarded our request for no contact, and since she clearly is partnered with Joey Berry in the effort to harass and defame me, I beg the court to put this order in place for the mental, physical, and emotional well being of my entire family.

Plaintiff included two emails from defendant as attachments.

Even if defendant's actions were "annoying" to plaintiff and thus constituted "harassment," plaintiff has not alleged any facts sufficient to sustain a finding that defendant caused plaintiff "to suffer substantial emotional distress[.]" N.C. Gen. Stat. § 50C-1(6)(b); *see* N.C. Gen. Stat. § 14-277.3A(b)(2), (4); *Watson*, 169 N.C. App. at 337, 610 S.E.2d at 477. The allegations of plaintiff's complaint actually come closer to a claim

**TYLL v. WILLETS**

[229 N.C. App. 155 (2013)]

for defamation than a claim for "stalking" via "harassment," *see* N.C. Gen. Stat. §§ 14–277.3A(b)(2), 50C-1(6), but even if we assume that defendant has "defamed" plaintiff, Chapter 50C provides no remedy for defamation.[3] The "threats" of which plaintiff complains are clearly not threats of physical harm but instead are threats to make statements about plaintiff to various others, including plaintiff's employer and the Department of Social Services. Defendant's statements as alleged by plaintiff are comparable to those in *Ramsey v. Harman*, where this Court noted that "the statute does not allow parties to implicate and interject our courts into juvenile hurls of gossip and innuendo between feuding parties where no evidence of any statutory ground is shown to justify entry of a no-contact order." 191 N.C. App. 146, 151, 661 S.E.2d 924, 927 (2008). Accordingly, plaintiff did not present any evidence upon which the trial court could properly conclude that defendant "stalked" plaintiff, and therefore the trial court erred in concluding that plaintiff was entitled to issuance of a no-contact order. *See* N.C. Gen. Stat. §§ 50C-1(6)-(7), 50C-2(a)(1).

### III. Conclusion

For the foregoing reasons, we reverse.

REVERSED.

Judges HUNTER, Robert C. and ERVIN concur.

---

3. We do not suggest that defamatory comments could never be a part of a pattern of harassment, but in this case, plaintiff's complaint does not support such a claim.