IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-210

No. COA20-545

Filed 18 May 2021

Union County, No. 19 CVD 3342

JENNIFER DIPRIMA O/B/O GRACE DIPRIMA, Plaintiff,

v.

BEGEE VANN O/B/O CLIFTON BENJAMIN VANN, V, Defendant.

Appeal by defendant from order entered 11 February 2020 by Judge Erin S. Hucks in Union County District Court. Heard in the Court of Appeals 13 April 2021.

*Stepp Law Group, PLLC, by Jordan M. Griffin, and Collins Family Law Group, by Rebecca K. Watts, for plaintiff-appellee.*

*Middlebrooks Law, PLLC, by James G. Middlebrooks, for defendant-appellant.*

ARROWOOD, Judge.

Clifton Benjamin Vann, V, ("defendant") appeals from entry of a No-Contact Order for Stalking entered by the district court on 11 February 2020. For the following reasons, we vacate the trial court's order.

I.    Background

Grace DiPrima ("plaintiff") and defendant's friendship started in the third grade. By eighth grade, according to plaintiff, the two were "best of friends." At all times relevant, plaintiff and defendant both attended The Fletcher School

("Fletcher"), an educational institution for children with learning differences. Plaintiff attended Fletcher to cope with learning disabilities, and defendant enrolled to improve social skill deficits that mirror Asperger's syndrome. Plaintiff and defendant were "really, really good friends[.]"

¶ 3    Plaintiff and defendant were in contact on an almost daily basis via phone conversations, text messaging, Instagram, and an application known as "Discord." Beginning in 2018, the relationship became more volatile. Plaintiff confided with her parents that some of defendant's actions made her feel uncomfortable, such as defendant putting his arm around plaintiff and holding her hand. After disclosing these incidents to her parents, plaintiff began participating in therapy and taking medications.

¶ 4    Between July 2018 and November 2019, plaintiff and defendant exchanged multiple messages concerning the topic of suicide. Plaintiff testified that she initially interpreted defendant's suicide comments as "jokes" but later took them more seriously.[1] Plaintiff's own suicidal comments, according to her, were "few and far between."

¶ 5    During this period, defendant relayed messages mentioning "shoot[ing] up the school" and suggesting that he wanted to "kill/torture" a teacher. According to

---

[1] Plaintiff also testified to observing defendant "cutting himself with a pen" during class one day at Fletcher.

plaintiff, defendant also threatened her life and stated that he wanted to fight her parents. Moreover, plaintiff testified that defendant told her that he knew how to mix chemicals and had a vast knowledge of guns. Plaintiff's communications to defendant, in turn, were similarly morbid. For instance, plaintiff told defendant that she wanted to kill her parents and sent defendant pictures of Harry Potter characters hanging from nooses. With respect to her threats to kill her own parents, plaintiff testified that "every teenager does that. Every teenager has a moment where it's like man . . . I can't stand my parents, I want to kill them."

¶ 6         In October 2019, plaintiff briefly cut off contact with defendant. However, shortly after this two-week pause, plaintiff called defendant to tell him about puppies she was fostering. The two then went out for pizza and coffee on 21 October 2019 and to a movie two days later. These events occurred just days after the period in October 2019 in which plaintiff alleged in her complaint that defendant's conduct warranted the entry of a no-contact order.

¶ 7         In late October 2019, plaintiff and her family took a trip to Florida where plaintiff purchased a light sabre for defendant as a birthday present because, in her words, they were "best friends." Thereafter, plaintiff invited defendant to join her on a family trip to Tennessee. During this trip in November 2019, plaintiff's parents became particularly troubled by defendant's behavior. Plaintiff's father testified that

defendant acted aggressively toward plaintiff and the family and that defendant told various "exceptionally dark" stories.

¶ 8 Upon returning from Tennessee, plaintiff's parents sought to cease all contact between the two teenagers. Plaintiff's parents also brought the matter before Fletcher and requested that the school prohibit defendant from future attendance. Fletcher placed defendant on a temporary suspension until it determined that it was safe for him to return. After reviewing reports from plaintiff's clinicians and recommendations by the school's "threat assessment team," Fletcher determined that defendant was not a threat to himself or others and that it was therefore safe for him to return to campus. Thereafter, on 21 November 2019, the Head of School at Fletcher sent an e-mail to defendant's parents stating that the school had "completed [its] due diligence review of [defendant's] status and [that] he is administratively cleared to return to school, effective 11-20-2019." Unsatisfied with this outcome, plaintiff sought court intervention to prevent defendant's return to Fletcher.[2]

¶ 9 On 19 November 2019, Jennifer DiPrima filed a "Complaint for No-Contact Order for Stalking or Nonconsensual Sexual Conduct" on behalf of plaintiff, who was sixteen years old at the time, against Begee Vann on behalf of defendant, who was

---

[2] The Head of School advised that defendant's return may violate the temporary No-Contact Order and therefore defendant may wish to consult legal counsel to determine how to best navigate this matter and protect defendant legally. Defendant did not return to Fletcher after this point.

seventeen years old at the time. Defendant did not file an answer to the complaint, nor did he file any motions with respect to the complaint.

¶ 10 On the same day, 19 November 2019, the district court entered an *ex parte* Temporary No-Contact Order against defendant. The Temporary No-Contact Order was extended three times until the matter appeared for an evidentiary hearing on 31 January 2020. At the time of the hearing, plaintiff was sixteen and defendant seventeen years of age.

¶ 11 At the close of plaintiff's case, defense counsel moved to dismiss on the grounds that the evidence presented did not support plaintiff's allegations of "stalking." Plaintiff's trial counsel—who did not represent plaintiff during her arguments on appeal—argued the following: "[Chapter] 50C is not based on what the defendant thinks, what he intended, and what he meant by any of this. This is all based on [plaintiff's] subjective intent. It's a subjective test based on what the plaintiff felt, how she was made to feel." Trial counsel for plaintiff went on to state that "[b]ased on [plaintiff's] subjective tests and the subjectivity of everything that's taken place, she's in fear." The district court orally denied the motion. Following the hearing, the district court judge stated that she would take the matter under advisement.

¶ 12 On 11 February 2020, the district court entered a one-year No-Contact Order for Stalking or Nonconsensual Sexual Conduct (the "Order"). The district court

concluded that plaintiff had suffered unlawful conduct by defendant in the following

ways:

> The Defendant has been intimidating and harassing the Plaintiff by the following actions: November 8-11, 2019, Defendant repeatedly followed and touched the Plaintiff without her consent and after telling the Defendant to stop; on July 30, 2018, September 20-21, 2018, October 26-27, 2018, June 23, 2019, and October 1, 2019 the Defendant has threatened suicide; on Oct[ober] 1, 2019, Defendant threatened to kill and physically harm the Plaintiff if she "crosses" him or if she stops being his friend; Defendant has threatened to shoot up the school; Defendant told the Plaintiff he wanted to kill and torture two separate teachers at the parties' school: Defendant tried to cut himself with a pen in class when he was upset with Plaintiff: November 8-11, 2019, Defendant told the Plaintiff that he wanted to fight both of her parents; Defendant admitted to the Plaintiff that he has suicidal ideations; Defendant has researched how to make bombs and shoot up the school. On more than one occasion, the Defendant has followed and otherwise harassed the Plaintiff and has placed the Plaintiff in reasonable fear for her safety and the safety of the Plaintiff's parents and the Defendant has caused the Plaintiff to suffer substantial emotional distress by placing the Plaintiff in fear of death, bodily injury, or continued harassment and has, in fact, caused the Plaintiff substantial emotional distress.

As a result, the court ordered that defendant shall cease "stalking" and "harass[ing]"

plaintiff and neither "visit, assault, molest, or otherwise interfere" with plaintiff, nor

"contact the plaintiff by telephone, written communication, or electronic means."

Furthermore, the Order prohibited defendant from entering or remaining present at

Fletcher (or plaintiff's residence) at times when plaintiff was present.

Defendant filed his notice of appeal of the Order on 11 March 2020. This appeal is properly before this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2019).

## II. Discussion

"[W]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable *de novo*." *Tyll v. Willets*, 229 N.C. App. 155, 158, 748 S.E.2d 329, 331 (2013) (quoting *Romulus v. Romulus*, 215 N.C. App. 495, 498, 715 S.E.2d 308, 311 (2011)).

## A. Defendant's Intent

Defendant argues that the trial court erred by failing to make findings of fact showing that he had the specific intent to stalk or otherwise commit "unlawful conduct" against plaintiff. We agree.

"Upon a finding that the victim has suffered unlawful conduct committed by the respondent, the court may issue temporary or permanent civil no-contact orders . . . ." N.C. Gen. Stat. § 50C-5(a) (2019). Two types of "unlawful conduct" can support the entry of a civil no-contact order: nonconsensual sexual conduct or "stalking." N.C. Gen. Stat. § 50C-1(7) (2019). As plaintiff does not allege

nonconsensual sexual conduct, we must decide whether the evidence supports a finding that defendant stalked plaintiff.

¶ 17        "Stalking" is statutorily defined as follows:

> On more than one occasion, following or otherwise harassing, as defined in G.S. 14-277.3A(b)(2), another person without legal purpose **with the intent** to do any of the following:
>
> a. Place the person in reasonable fear either for the person's safety or the safety of the person's immediate family or close personal associates.
>
> b. Cause that person to suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment and that in fact causes that person substantial emotional distress.

N.C. Gen. Stat. § 50C-1(6)(a)-(b) (2019) (emphasis added).  As for behavior that amounts to "harassing," section 50C-1(6) refers to the definition set out in N.C. Gen. Stat. § 14-277.3A(b)(2):  "Knowing conduct . . . directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose." N.C. Gen. Stat. § 14-277.3A(b)(2) (2019).  However, a "finding of harassment alone, even if supported by competent evidence, cannot be the sole basis to sustain entry of a civil no-contact order under N.C. Gen. Stat. § 50C-1(6)."  *Ramsey v. Harman*, 191 N.C. App. 146, 149, 661 S.E.2d 924, 926 (2008).  The *Ramsey* Court specifically held that N.C. Gen. Stat. § 50C-1(6) "requires the trial court to further find defendant's

harassment was accompanied by the specific intent to either: (1) place the person in fear for their safety, or the safety of their family or close personal associates or (2) cause the person substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment and in fact cause that person substantial emotional distress." *Id.* (citing N.C. Gen. Stat. § 50C-1(6)). We reiterated that holding in *St. John v. Brantley*, stating that the "entry of a civil no-contact order requires not only findings of fact that show the defendant harassed the plaintiff, but also that the 'defendant's harassment was accompanied by the specific intent' described in section 50C-1(6)(a) or (b)." *St. John v. Brantley*, 217 N.C. App. 558, 562, 720 S.E.2d 754, 757 (2011) (citing *Ramsey*, 191 N.C. App. at 149, 661 S.E.2d at 926).

¶ 18        In the present case, the trial court failed to make any finding that defendant specifically intended to cause any of the harm set forth in N.C. Gen. Stat. § 50C-1(6). Plaintiff's appellant counsel argues that such a finding can be inferred from the trial court's other findings. We reject this argument. It is clear from our holdings in *Ramsey* and *St. John* that such a finding must be specifically made, not inferred. Even if we were to accept plaintiff's argument that an intent finding can be inferred when applied to cases involving two adults, as opposed to two minor teenagers with learning and processing issues, it would still fail given the unique facts of this case. In this action, the evidence shows that two minor teenagers with learning and processing issues mutually exchanged disturbing communications during a volatile

yet consensual relationship. Plaintiff herself admitted that this behavior was a "teenage thing," and testimony elicited from defendant's psychologist and psychiatrist confirmed the same. While we do not condone the dynamics of the parties' relationship, we realize that "normal" teenagers may express their emotions through unsettling discourse. As succinctly stated by defendant's psychologist, Ryan Kelly, M.D., "normal is not [always] healthy." This situation is a perfect example as to why a specific finding of intent is necessary under the statute. Thus, the trial court erred by failing to make findings of fact as to defendant's intent.[3]

¶ 19 We recognize that the current printed forms from the North Carolina Administrative Office of the Courts (the "AOC") do not inform our district court judges of the need to make that determination. Therefore, we encourage the AOC to revise AOC-CV-520 (and any other relevant papers) to include the statutory requirements set out in Chapter 50C including, but not limited to, a defendant's specific intent to commit unlawful conduct against the movant.

## III.   Conclusion

¶ 20 For the foregoing reasons, we vacate the trial court's order.

VACATED.

Chief Judge STROUD and Judge JACKSON concur.

---

[3] In light of our holding above, we do not address defendant's remaining arguments.