IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-210

 No. COA20-545

 Filed 18 May 2021

 Union County, No. 19 CVD 3342

 JENNIFER DIPRIMA O/B/O GRACE DIPRIMA, Plaintiff,

 v.

 BEGEE VANN O/B/O CLIFTON BENJAMIN VANN, V, Defendant.

 Appeal by defendant from order entered 11 February 2020 by Judge Erin S.

 Hucks in Union County District Court. Heard in the Court of Appeals 13 April 2021.

 Stepp Law Group, PLLC, by Jordan M. Griffin, and Collins Family Law Group,
 by Rebecca K. Watts, for plaintiff-appellee.

 Middlebrooks Law, PLLC, by James G. Middlebrooks, for defendant-appellant.

 ARROWOOD, Judge.

¶1 Clifton Benjamin Vann, V, (“defendant”) appeals from entry of a No-Contact

 Order for Stalking entered by the district court on 11 February 2020. For the

 following reasons, we vacate the trial court’s order.

 I. Background

¶2 Grace DiPrima (“plaintiff”) and defendant’s friendship started in the third

 grade. By eighth grade, according to plaintiff, the two were “best of friends.” At all

 times relevant, plaintiff and defendant both attended The Fletcher School
 DIPRIMA V. VANN

 2021-NCCOA-210

 Opinion of the Court

 (“Fletcher”), an educational institution for children with learning differences.

 Plaintiff attended Fletcher to cope with learning disabilities, and defendant enrolled

 to improve social skill deficits that mirror Asperger’s syndrome. Plaintiff and

 defendant were “really, really good friends[.]”

¶3 Plaintiff and defendant were in contact on an almost daily basis via phone

 conversations, text messaging, Instagram, and an application known as “Discord.”

 Beginning in 2018, the relationship became more volatile. Plaintiff confided with her

 parents that some of defendant’s actions made her feel uncomfortable, such as

 defendant putting his arm around plaintiff and holding her hand. After disclosing

 these incidents to her parents, plaintiff began participating in therapy and taking

 medications.

¶4 Between July 2018 and November 2019, plaintiff and defendant exchanged

 multiple messages concerning the topic of suicide. Plaintiff testified that she initially

 interpreted defendant’s suicide comments as “jokes” but later took them more

 seriously.1 Plaintiff’s own suicidal comments, according to her, were “few and far

 between.”

¶5 During this period, defendant relayed messages mentioning “shoot[ing] up the

 school” and suggesting that he wanted to “kill/torture” a teacher. According to

 1 Plaintiff also testified to observing defendant “cutting himself with a pen” during class one

 day at Fletcher.
 DIPRIMA V. VANN

 2021-NCCOA-210

 Opinion of the Court

 plaintiff, defendant also threatened her life and stated that he wanted to fight her

 parents. Moreover, plaintiff testified that defendant told her that he knew how to

 mix chemicals and had a vast knowledge of guns. Plaintiff’s communications to

 defendant, in turn, were similarly morbid. For instance, plaintiff told defendant that

 she wanted to kill her parents and sent defendant pictures of Harry Potter characters

 hanging from nooses. With respect to her threats to kill her own parents, plaintiff

 testified that “every teenager does that. Every teenager has a moment where it’s like

 man . . . I can’t stand my parents, I want to kill them.”

¶6 In October 2019, plaintiff briefly cut off contact with defendant. However,

 shortly after this two-week pause, plaintiff called defendant to tell him about puppies

 she was fostering. The two then went out for pizza and coffee on 21 October 2019 and

 to a movie two days later. These events occurred just days after the period in October

 2019 in which plaintiff alleged in her complaint that defendant’s conduct warranted

 the entry of a no-contact order.

¶7 In late October 2019, plaintiff and her family took a trip to Florida where

 plaintiff purchased a light sabre for defendant as a birthday present because, in her

 words, they were “best friends.” Thereafter, plaintiff invited defendant to join her on

 a family trip to Tennessee. During this trip in November 2019, plaintiff’s parents

 became particularly troubled by defendant’s behavior. Plaintiff’s father testified that
 DIPRIMA V. VANN

 2021-NCCOA-210

 Opinion of the Court

 defendant acted aggressively toward plaintiff and the family and that defendant told

 various “exceptionally dark” stories.

¶8 Upon returning from Tennessee, plaintiff’s parents sought to cease all contact

 between the two teenagers. Plaintiff’s parents also brought the matter before

 Fletcher and requested that the school prohibit defendant from future attendance.

 Fletcher placed defendant on a temporary suspension until it determined that it was

 safe for him to return. After reviewing reports from plaintiff’s clinicians and

 recommendations by the school’s “threat assessment team,” Fletcher determined that

 defendant was not a threat to himself or others and that it was therefore safe for him

 to return to campus. Thereafter, on 21 November 2019, the Head of School at

 Fletcher sent an e-mail to defendant’s parents stating that the school had “completed

 [its] due diligence review of [defendant’s] status and [that] he is administratively

 cleared to return to school, effective 11-20-2019.” Unsatisfied with this outcome,

 plaintiff sought court intervention to prevent defendant’s return to Fletcher.2

¶9 On 19 November 2019, Jennifer DiPrima filed a “Complaint for No-Contact

 Order for Stalking or Nonconsensual Sexual Conduct” on behalf of plaintiff, who was

 sixteen years old at the time, against Begee Vann on behalf of defendant, who was

 2 The Head of School advised that defendant’s return may violate the temporary No-Contact

 Order and therefore defendant may wish to consult legal counsel to determine how to best
 navigate this matter and protect defendant legally. Defendant did not return to Fletcher
 after this point.
 DIPRIMA V. VANN

 2021-NCCOA-210

 Opinion of the Court

 seventeen years old at the time. Defendant did not file an answer to the complaint,

 nor did he file any motions with respect to the complaint.

¶ 10 On the same day, 19 November 2019, the district court entered an ex parte

 Temporary No-Contact Order against defendant. The Temporary No-Contact Order

 was extended three times until the matter appeared for an evidentiary hearing on

 31 January 2020. At the time of the hearing, plaintiff was sixteen and defendant

 seventeen years of age.

¶ 11 At the close of plaintiff’s case, defense counsel moved to dismiss on the grounds

 that the evidence presented did not support plaintiff’s allegations of “stalking.”

 Plaintiff’s trial counsel—who did not represent plaintiff during her arguments on

 appeal—argued the following: “[Chapter] 50C is not based on what the defendant

 thinks, what he intended, and what he meant by any of this. This is all based on

 [plaintiff’s] subjective intent. It’s a subjective test based on what the plaintiff felt,

 how she was made to feel.” Trial counsel for plaintiff went on to state that “[b]ased

 on [plaintiff’s] subjective tests and the subjectivity of everything that’s taken place,

 she’s in fear.” The district court orally denied the motion. Following the hearing, the

 district court judge stated that she would take the matter under advisement.

¶ 12 On 11 February 2020, the district court entered a one-year No-Contact Order

 for Stalking or Nonconsensual Sexual Conduct (the “Order”). The district court
 DIPRIMA V. VANN

 2021-NCCOA-210

 Opinion of the Court

concluded that plaintiff had suffered unlawful conduct by defendant in the following

ways:

 The Defendant has been intimidating and harassing the
 Plaintiff by the following actions: November 8-11, 2019,
 Defendant repeatedly followed and touched the Plaintiff
 without her consent and after telling the Defendant to stop;
 on July 30, 2018, September 20-21, 2018, October 26-27,
 2018, June 23, 2019, and October 1, 2019 the Defendant
 has threatened suicide; on Oct[ober] 1, 2019, Defendant
 threatened to kill and physically harm the Plaintiff if she
 “crosses” him or if she stops being his friend; Defendant has
 threatened to shoot up the school; Defendant told the
 Plaintiff he wanted to kill and torture two separate
 teachers at the parties’ school: Defendant tried to cut
 himself with a pen in class when he was upset with
 Plaintiff: November 8-11, 2019, Defendant told the
 Plaintiff that he wanted to fight both of her parents;
 Defendant admitted to the Plaintiff that he has suicidal
 ideations; Defendant has researched how to make bombs
 and shoot up the school. On more than one occasion, the
 Defendant has followed and otherwise harassed the
 Plaintiff and has placed the Plaintiff in reasonable fear for
 her safety and the safety of the Plaintiff’s parents and the
 Defendant has caused the Plaintiff to suffer substantial
 emotional distress by placing the Plaintiff in fear of death,
 bodily injury, or continued harassment and has, in fact,
 caused the Plaintiff substantial emotional distress.

As a result, the court ordered that defendant shall cease “stalking” and “harass[ing]”

plaintiff and neither “visit, assault, molest, or otherwise interfere” with plaintiff, nor

“contact the plaintiff by telephone, written communication, or electronic means.”

Furthermore, the Order prohibited defendant from entering or remaining present at

Fletcher (or plaintiff’s residence) at times when plaintiff was present.
 DIPRIMA V. VANN

 2021-NCCOA-210

 Opinion of the Court

¶ 13 Defendant filed his notice of appeal of the Order on 11 March 2020. This

 appeal is properly before this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2019).

 II. Discussion

¶ 14 “[W]hen the trial court sits without a jury, the standard of review on appeal is

 whether there was competent evidence to support the trial court’s findings of fact and

 whether its conclusions of law were proper in light of such facts. While findings of

 fact by the trial court in a non-jury case are conclusive on appeal if there is evidence

 to support those findings, conclusions of law are reviewable de novo.” Tyll v. Willets,

 229 N.C. App. 155, 158, 748 S.E.2d 329, 331 (2013) (quoting Romulus v. Romulus,

 215 N.C. App. 495, 498, 715 S.E.2d 308, 311 (2011)).

 A. Defendant’s Intent

¶ 15 Defendant argues that the trial court erred by failing to make findings of fact

 showing that he had the specific intent to stalk or otherwise commit “unlawful

 conduct” against plaintiff. We agree.

¶ 16 “Upon a finding that the victim has suffered unlawful conduct committed by

 the respondent, the court may issue temporary or permanent civil no-contact

 orders . . . .” N.C. Gen. Stat. § 50C-5(a) (2019). Two types of “unlawful conduct” can

 support the entry of a civil no-contact order: nonconsensual sexual conduct or

 “stalking.” N.C. Gen. Stat. § 50C-1(7) (2019). As plaintiff does not allege
 DIPRIMA V. VANN

 2021-NCCOA-210

 Opinion of the Court

 nonconsensual sexual conduct, we must decide whether the evidence supports a

 finding that defendant stalked plaintiff.

¶ 17 “Stalking” is statutorily defined as follows:

 On more than one occasion, following or otherwise
 harassing, as defined in G.S. 14-277.3A(b)(2), another
 person without legal purpose with the intent to do any of
 the following:

 a. Place the person in reasonable fear either for the
 person’s safety or the safety of the person’s
 immediate family or close personal associates.

 b. Cause that person to suffer substantial
 emotional distress by placing that person in fear
 of death, bodily injury, or continued harassment
 and that in fact causes that person substantial
 emotional distress.

 N.C. Gen. Stat. § 50C-1(6)(a)-(b) (2019) (emphasis added). As for behavior that

 amounts to “harassing,” section 50C-1(6) refers to the definition set out in N.C. Gen.

 Stat. § 14-277.3A(b)(2): “Knowing conduct . . . directed at a specific person that

 torments, terrorizes, or terrifies that person and that serves no legitimate purpose.”

 N.C. Gen. Stat. § 14-277.3A(b)(2) (2019). However, a “finding of harassment alone,

 even if supported by competent evidence, cannot be the sole basis to sustain entry of

 a civil no-contact order under N.C. Gen. Stat. § 50C-1(6).” Ramsey v. Harman, 191

 N.C. App. 146, 149, 661 S.E.2d 924, 926 (2008). The Ramsey Court specifically held

 that N.C. Gen. Stat. § 50C-1(6) “requires the trial court to further find defendant’s
 DIPRIMA V. VANN

 2021-NCCOA-210

 Opinion of the Court

 harassment was accompanied by the specific intent to either: (1) place the person in

 fear for their safety, or the safety of their family or close personal associates or (2)

 cause the person substantial emotional distress by placing that person in fear of

 death, bodily injury, or continued harassment and in fact cause that person

 substantial emotional distress.” Id. (citing N.C. Gen. Stat. § 50C-1(6)). We reiterated

 that holding in St. John v. Brantley, stating that the “entry of a civil no-contact order

 requires not only findings of fact that show the defendant harassed the plaintiff, but

 also that the ‘defendant’s harassment was accompanied by the specific intent’

 described in section 50C-1(6)(a) or (b).” St. John v. Brantley, 217 N.C. App. 558, 562,

 720 S.E.2d 754, 757 (2011) (citing Ramsey, 191 N.C. App. at 149, 661 S.E.2d at 926).

¶ 18 In the present case, the trial court failed to make any finding that defendant

 specifically intended to cause any of the harm set forth in N.C. Gen. Stat. § 50C-1(6).

 Plaintiff’s appellant counsel argues that such a finding can be inferred from the trial

 court’s other findings. We reject this argument. It is clear from our holdings in

 Ramsey and St. John that such a finding must be specifically made, not inferred.

 ¶ 19 Even if we were to accept plaintiff’s argument that an intent finding can be

 inferred when applied to cases involving two adults, as opposed to two minor

 teenagers with learning and processing issues, it would still fail given the unique

 facts of this case. In this action, the evidence shows that two minor teenagers with

 learning and processing issues mutually exchanged disturbing communications
 DIPRIMA V. VANN

 2021-NCCOA-210

 Opinion of the Court

 during a volatile yet consensual relationship. Plaintiff herself admitted that this

 behavior was a “teenage thing,” and testimony elicited from defendant’s psychologist

 and psychiatrist confirmed the same. While we do not condone the dynamics of the

 parties’ relationship, we realize that “normal” teenagers may express their emotions

 through unsettling discourse. As succinctly stated by defendant’s psychologist, Ryan

 Kelly, M.D., “normal is not [always] healthy.” This situation is a perfect example as

 to why a specific finding of intent is necessary under the statute. Thus, the trial court

 erred by failing to make findings of fact as to defendant’s intent.3

¶ 19 We recognize that the current printed forms from the North Carolina

 Administrative Office of the Courts (the “AOC”) do not inform our district court judges

 of the need to make that determination. Therefore, we encourage the AOC to revise

 AOC-CV-520 (and any other relevant papers) to include the statutory requirements

 set out in Chapter 50C including, but not limited to, a defendant’s specific intent to

 commit unlawful conduct against the movant.

 III. Conclusion

¶ 20 For the foregoing reasons, we vacate the trial court’s order.

 VACATED.

 Chief Judge STROUD and Judge JACKSON concur.

 3 In light of our holding above, we do not address defendant’s remaining arguments.