Orlando Residence, Ltd. v. All. Hosp. Mgmt., LLC, 2018 NCBC 132.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

ORLANDO RESIDENCE, LTD.,

        Plaintiff,

    v.

ALLIANCE HOSPITALITY
MANAGEMENT, LLC; ROLF A.
TWEETEN; and AXIS HOSPITALITY,
INC.,

        Defendants and
        Crossclaim Defendants,

   and

KENNETH E. NELSON,

        Nominal Defendant and
        Crossclaim Plaintiff.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 3254

**ORDER & OPINION DISMISSING
ACTION**

1. THIS MATTER is before the Court on (1) Defendants Alliance Hospitality Management, LLC ("Alliance"), Rolf A. Tweeten ("Tweeten"), and Axis Hospitality Inc.'s ("Axis") (collectively "Alliance Defendants") Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) ("Alliance Defendants' Motion to Dismiss Orlando's Claims"); (2) Plaintiff Orlando Residence, Ltd.'s ("Orlando") Motion for Leave to File an Amended Complaint ("Motion to Amend"); (3) Nominal Defendant and Crossclaim Plaintiff Kenneth E. Nelson's ("Nelson") Motion Re Status as a Nominal Defendant ("Nelson's Nominal Defendant Motion"); (4) Orlando's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) ("Orlando's Motion to Dismiss Nelson's Crossclaims"); (5) Alliance Defendants' Motion to Dismiss Crossclaims, to

Strike, for More Definite Statement, and for Entry of Appropriate Orders ("Alliance Defendants' Motion to Dismiss Nelson's Crossclaims"); and (6) Nelson's Motion for Leave to be Heard and for Continuance and Discovery ("Nelson's Rule 56(f) Motion").

2. For the reasons discussed below, the Court GRANTS Alliance Defendants' Motion to Dismiss Orlando's Claims pursuant to Rule 12(b)(6), DENIES Orlando's Motion to Amend, DENIES Nelson's Nominal Defendant Motion, GRANTS Orlando's Motion to Dismiss Nelson's Crossclaims, GRANTS Alliance Defendants' Motion to Dismiss Nelson's Crossclaims, and DENIES Nelson's Rule 56(f) Motion. As a result, all claims in this action are DISMISSED with PREJUDICE.

*Kenison, Dudley & Crawford, LLC, by F. James Warmoth, for Plaintiff Orlando Residence, Ltd.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Michael W. Mitchell and Jackson W. Moore, Jr., for Defendants Alliance Hospitality Management, LLC, Rolf A. Tweeten, and Axis Hospitality, Inc.*

*Kenneth E. Nelson (pro se).*

Gale, Judge.

## I. INTRODUCTION

3. This action is the third in a line of lawsuits related to Nelson's ownership interest in Alliance, and Orlando's right to receive Alliance distributions as Nelson's judgment creditor. Nelson instituted the first lawsuit, *Nelson v. Alliance Hosp. Mgmt., LLC*, No. 11 CVS 3217, in Wake County Superior Court (the "Nelson Action"), contending that he was entitled to ten Alliance ownership units, which would now represent a 16.4% ownership percentage as a result of Alliance having redeemed

units of a withdrawing member. In the Nelson Action, Alliance Defendants admitted Nelson was entitled to a 10% share, but denied that he had ever been granted actual ownership units. A few weeks later, Orlando, then represented by the same attorney representing Alliance Defendants in the Nelson Action, brought a separate action, *Orlando Residence, Ltd. v. Nelson*, No. 12-CVS-12861, also in Wake County Superior Court (the "Foreign Judgment Action"), in which it sought to enforce two foreign judgments it had secured against Nelson. In the Foreign Judgment Action, Orlando secured charging orders directing that any Alliance distributions that would otherwise be made to Nelson should be made to Orlando instead.

4. After the charging orders were issued, Alliance made several distributions to its members during the pendency of the Nelson Action. Consistent with its litigation position, Alliance distributed a 10% share to Orlando representing Nelson's ownership interest rather than a distribution of 16.4%.

5. The Nelson Action was tried before a jury which was asked only to determine whether Nelson had been validly issued ten ownership units in Alliance. This Court issued judgment accordingly, directing Alliance to reflect this ownership on its corporate books. Neither the jury nor this Court was asked to determine the percentage ownership those units represent.

6. Following entry of judgment in the Nelson Action, Orlando made a motion in the Foreign Judgment Action to hold Alliance Defendants in contempt on the basis that their failure to distribute 16.4% of distributions violated the court's charging orders. After fully considering the litigation record in the Nelson Action,

presiding Superior Court Judge Hon. Michael Morgan entered an order finding and concluding as a matter of law that Alliance had complied with the charging orders when distributing 10%.

7.    Orlando did not appeal Judge Morgan's order, nor did it seek to continue to litigate a claim in the Foreign Judgment Action that it was entitled to recoup an additional percentage of prior Alliance distributions.  Rather, it instituted this third action which has been designated as a complex business case and assigned to the undersigned.  Orlando asserts that it has standing to bring this action because Nelson's membership rights in Alliance were assigned to Orlando immediately upon issuance of the charging orders.  The Complaint and proposed Amended Complaint contain a number of causes of action, each of which depend upon this central premise.

8.    The Court now finds and concludes that this action is an improper collateral attack on Judge Morgan's order, and Orlando's action should be dismissed with prejudice.  While Orlando named Nelson as a nominal defendant in this current action, Nelson contends that he is a proper party to present multiple claims against Orlando and Alliance Defendants.  The Court disagrees and concludes that all claims pending in the action should now be dismissed.

## II.    STATEMENT OF FACTS

9.    Tweeten is the sole owner of Axis, an Illinois corporation with its principal place of business in North Carolina.  In 2007, Axis purchased a 51% interest in Alliance, a Georgia limited-liability company that provides hotel management services.  *Nelson v. Alliance Hosp. Mgmt., LLC*, No. COA13-1325, 2014 N.C. App.

LEXIS 521, at *2 (May 20, 2014). Tweeten hired Nelson as a consultant to help him acquire Alliance. *Id.* After Axis fully acquired Alliance, Nelson worked for Alliance until January 2011. *Id.*

10. On February 25, 2011, Nelson brought the Nelson Action against Alliance Defendants. *See* Complaint, *Nelson v. Alliance Hosp. Mgmt., LLC*, No. 11 CVS 3217 (N.C. Super. Ct. Feb. 25, 2011), ECF No. 1. The action was designated as an exceptional business case, Notice of Designation, *Nelson*, No. 11 CVS 3217 (N.C. Super. Ct. March 22, 2011), ECF No. 17, and assigned to the undersigned, Assignment Order, *Nelson*, No. 11 CVS 3217 (N.C. Super. Ct. March 24, 2011), ECF No. 18. The Nelson Action arose from a dispute between Nelson and Alliance Defendants "over the existence and extent of [Nelson's] membership and ownership interests in Alliance, and the refusal of [Alliance] Defendants to distribute to Nelson any proceeds from a sale of a substantial portion of Alliance's assets." *Nelson*, No. 11 CVS 3217, 2013 NCBC LEXIS 5, at *1 (N.C. Super. Ct. Jan. 25, 2013).

11. Among his multiple claims, Nelson sought a declaratory judgment "that [he] owns ten of Alliance's sixty-one outstanding Membership Interest Units." *Id.* at *2. Nelson asserted that documents representing a 2009 Consent Resolution and a 2010 Admission of New Member evidenced the corporate action taken to issue him ten ownership units. *Nelson*, No. 11 CVS 3217, 2013 NCBC LEXIS 2, at *5–6 (N.C. Super. Ct. Jan. 3, 2013). He claimed the issuance was effective as of March 2010, *see id.* at 24, a date at which one-hundred units were outstanding, and after which Alliance redeemed units from a withdrawing member leaving only sixty-one units

outstanding. Alliance Defendants contended that the documents were not valid corporate actions but that Tweeten would nonetheless honor his oral promise of a fixed 10% interest. *Id.* at *12, 19. All parties sought a declaration in their favor, but the only claim remaining at trial was Nelson's claim for a declaratory judgment. *See Nelson*, 2016 N.C. App. LEXIS 412, at *10 (April 19, 2016).

12. A jury trial was held during the week of March 16, 2015. The parties agreed to submit two special interrogatories to the jury: (1) "Did Alliance's board of directors issue 10 membership units to Kenneth E. Nelson?" and (2) "Does section 3.1.12 of the Operating Agreement void the transfer of the membership units?" Final Judgment at 2, *Nelson*, No. 11 CVS 3217 (N.C. Super. Ct. March 27, 2015), ECF No. 133. The jury answered the first issue, "Yes" and the second issue, "No." *Id.* The jury was not asked to determine the percentage interest Nelson's ten units represent at any given time. The Court entered judgment directing Alliance's Board of Directors to "adopt a resolution, or otherwise amend the corporate records, to reflect that Nelson owns 10 membership units." *Id.* The Court never decreed Nelson's percentage ownership in Alliance.

13. Orlando brought its Foreign Judgment Action against Nelson within weeks of the Nelson Action. In that action, on May 12, 2011, presiding judge Hon. Michael O'Foghluda recognized a Tennessee judgment Orlando had secured against Nelson, and issued a charging order directing that "any distribution, allocations, or payments in any form otherwise due from Alliance Hospitality Management LLC, to Kenneth E. Nelson up to $121,127.85 . . . shall instead be paid to Orlando Residence

Ltd." (Compl. ¶ 21, ECF No. 5.) On February 13, 2013, Judge O'Foghluda issued a second charging order on the basis of a judgment entered for Orlando against Nelson in the United States District Court for the District of South Carolina in the amount of $4,000,000, plus post judgment interest. (*See* Compl. ¶ 22.)

14. The two Wake County suits proceeded simultaneously and predated the present action. The same counsel represented Orlando as plaintiff in the Foreign Judgment Action and Alliance Defendants in defense of the Nelson Action. During the pendency of the proceedings, Alliance made distributions to or on behalf of its members. It paid 10% to Orlando pursuant to the charging orders, reflecting Alliance Defendants' continued position that Nelson's ownership interest is 10%.

15. In this present action, Orlando contends that Alliance made distributions totaling $7,167,086 between May 12, 2011 and March 7, 2013, 10% of which was paid to Orlando, (Compl. ¶ 50), and that Alliance made an additional $5,762.00 distribution to Orlando on April 14, 2018, (Supp. Br. Sup. Mot. Leave Am. & Supp. Compl. Orlando Residence, LTD ¶ 1, ECF No. 92). Orlando contends that upon issuance of the first charging order in 2011 it immediately became an assignee of Nelson's membership interest in Alliance. However, Orlando neither intervened in the Nelson Action nor advised this Court of its position that Alliance Defendants were making deficient distributions to Orlando. It likewise raised no objection in the Foreign Judgment Action at the time that distributions were made.

16. Following this Court's entry of judgment in the Nelson Action on March 27, 2015, Orlando filed a motion in the Foreign Judgment Action on September 3,

2015, seeking to hold Alliance Defendants in contempt for failing to comply with the charging orders when distributing 10% rather than 16.4% of the total distribution to Orlando on Nelson's behalf. Hon. Michael R. Morgan, now Associate Justice of the North Carolina Supreme Court, heard the motion as the presiding Wake County Superior Court Judge. Before ruling he heard argument from both Orlando and Alliance Defendants, and he considered the substantial evidentiary record in and rulings by this Court in the Nelson Action.

17. On November 20, 2015, Judge Morgan entered a written order specifically concluding that, "as a matter of law . . . Alliance complied with the terms of the Charging Order." (Mem. Supp. Mot. Dismiss Pursuant Rules 12(b)(1) & 12(b)(6) Defs./Cross-cl. Defs. Alliance Hospitality Mgmt., LLC Ex. F, at ¶ 31 ("Order Denying Mot. Civil Contempt"), ECF No. 21.7.) Orlando neither appealed that order in the Foreign Judgment Action nor sought to continue litigating its right to additional amounts of prior distributions as Nelson's assignee.

### III.  PROCEDURAL HISTORY

18. Orlando initiated the present action on March 1, 2017. (*See* Compl.)

19. Orlando asserts claims for (1) declaratory judgment, (2) violation of the charging orders/civil contempt, (3) violation of the Uniform Fraudulent Transfer Act, (4) constructive trust, (5) conversion, and (6) accounting. (*See* Compl. ¶¶ 57–108.) Orlando seeks a declaratory judgment "that there are 61 units outstanding in Alliance, that Nelson owns 16.4% of Alliance, and that Alliance was and in the future

is required to pay 16.4% of all distributions to [Orlando] until such time as [Orlando]'s judgments against Nelson are satisfied." (Compl. ¶ 68.)

20. Orlando named Nelson as a nominal defendant but asserts no claims against Nelson. (*See* Compl. ¶ 12.)

21. This action was designated as a complex business case by the Chief Justice on March 15, 2017, (Designation Order, ECF No. 7), and assigned to the undersigned on the same day, (Assignment Order, ECF No. 8).

22. On March 30, 2017, Nelson filed a responsive pleading in which he seeks to state claims against both Orlando and Alliance Defendants, all denominated as "crossclaims." (Answer, Defenses & Cross-cls. Kenneth E. Nelson, ECF No. 11.)

23. Alliance Defendants moved to dismiss Orlando's claims on May 3, 2017. (Mot. Dismiss Pursuant Rules 12(b)(1) & 12(b)(6) Defs./Cross-cl. Defs. Alliance Hospitality Mgmt., LLC, ECF No. 20.)

24. On May 30, 2017, Alliance Defendants moved to dismiss Nelson's crossclaims or "to strike impertinent and irrelevant material, for a more definite statement, and for the Court to enter appropriate orders to prevent future vexatious litigation by Nelson against the Alliance Defendants." (Mot. Dismiss Cross-cls., Strike, More Definite Statement & Entry Appropriate Order, ECF No. 31.)

25. Orlando also moved to dismiss Nelson's crossclaims on May 30, 2017. (Mot. Dismiss Cross-cls. Pl. Orlando Residence, Ltd., ECF No. 33.)

26. Nelson filed his Nominal Defendant Motion on August 31, 2017, arguing that he is more than a nominal defendant and should be allowed to pursue claims. (Nelson's Mot. Re Status Nominal Def. 2–3, ECF No. 54.)

27. On September 5, 2017, the parties filed the record from the Foreign Judgment Action. (*See* Notice Filing Record 12 CvS 12861, ECF No. 58.)

28. Nelson filed his Rule 56(f) Motion on October 12, 2017, claiming he is entitled to conduct discovery before motions to dismiss his claims should be heard. (Nelson's Mot. Leave Heard & Continuance & Disc., ECF No. 66.)

29. On October 20, 2017, Orlando moved to amend its Complaint, (Mot. Leave Am. & Suppl. Compl. Orlando Residence, Ltd. ("Orlando's Mot. Leave Amend Compl."), ECF No. 72), which Alliance Defendants oppose, (*see* Resp. Opp'n Mot. Leave Amend & Supp. Compl., ECF No. 83).

30. All Motions have been fully briefed and heard and are now ripe for disposition.

## IV.    ANALYSIS

### A.    <u>Alliance Defendants' Motion to Dismiss Orlando's Claims Must Be Granted</u>

31. Alliance Defendants move to dismiss all of Orlando's claims on the grounds that (1) Orlando does not have standing to litigate the ownership structure of Alliance, which is an internal corporate issue; (2) the Wake County Superior Court has already ruled that Alliance has complied with the charging orders, and its ruling bars at least claims for any distribution through the date of that ruling on November 20, 2015; (3) Orlando's claims depend on Nelson's rights, and any claim to enforce

those rights is barred by the claim preclusion doctrine; and (4) Orlando's claims are barred by the applicable statute of limitations. (*See* Mem. Supp. Mot. Dismiss Pursuant Rules 12(b)(1) & 12(b)(6) 2, ECF No. 21.1.) The Court considers this Motion addressed to the Original Complaint, as intended. As discussed more fully below, the Court finds that the same result would be proper if the Amended Complaint was allowed and the same motion to dismiss was presented against it.

32. Orlando contends that this Court cannot properly consider the record in the Foreign Judgment Action when ruling on a Rule 12(b)(6) motion, and in particular, this Court should not consider Judge Morgan's order denying Orlando's effort to hold Alliance Defendants in contempt. (Br. Opp'n Mot. Dismiss Defs. 11–12 ("Resp. Br."), ECF No. 35.)

33. Orlando's argument fails for two reasons. First, Alliance Defendants challenge Orlando's standing, which presents a matter of subject matter jurisdiction and affords the Court a basis to consider matters beyond the Complaint. *See DOT v. Blue*, 147 N.C. App. 596, 603, 556 S.E.2d 609, 617 (2001) ("When reviewing a motion to dismiss for lack of subject matter jurisdiction . . . , a trial court may consider and weigh matters outside the pleadings."). Second, the Foreign Judgment Action is a matter of public record and is properly considered by this Court, even on a Rule 12(b)(6) motion, because like this case, it was a proceeding before the Wake County Superior Court. *See Funderburk v. JP Morgan Chase Bank, N.A.*, 241 N.C. App. 415, 420, 775 S.E.2d 1, 4 (2015) (citing *Stocum v. Oakley*, 185 N.C. App. 56, 61, 648 S.E.2d

227, 232 (2007) ("Trial courts may properly take judicial notice of its own records in any prior or contemporary case when the matter noticed has relevance.")).

34.     Significantly, Orlando asserts that, based on N.C. Gen. Stat. § 57-C-5-03, which was in effect at the time the charging orders were entered, it acquired standing to assert any of Nelson's rights as an assignee of his interest in Alliance as early as May 12, 2011 upon the issuance of a charging order in the Foreign Judgment Action.[1]  (Resp. Br. 3.)  On that basis, Orlando asked Judge Morgan to find Alliance in civil contempt of the charging orders for distributing 10% instead of 16.4%.  Fully aware of the underlying facts and disputes, Judge Morgan made the specific and precise finding that "as a matter of law . . . Alliance complied with the terms of the Charging Order . . . ."  (Order Denying Mot. Civil Contempt ¶ 31.)  Yet, Orlando seeks to obtain the exact opposite outcome in this present action on the same facts and on essentially the same claim, asserting rights it insists it has held since the first charging order.

35.     North Carolina law clearly prohibits collaterally attacking the ruling of one superior court judge by presenting the same issue to another judge.  *See State v. Woolridge*, 357 N.C. 544, 549, 59 S.E.2d 191, 194 (2003) ("No appeal lies from one superior court judge to another.") (citing *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972)).  Orlando seeks to avoid that rule by arguing that Judge Morgan did not finally adjudicate the issue of what percentage ownership is

---

[1] It is unclear whether Orlando's rights as Nelson's assignee are a matter of North Carolina law or the law of Georgia, where Alliance was incorporated.  The Court need not resolve that issue as the result is the same under the law of both states.

represented by Nelson's ten units. (Resp. Br. 1.) Unlike the claim preclusion doctrine, the prior judge's ruling need not be a final judgment before the rule applies. *See, e.g., Woolridge*, 357 N.C. at 550, 59 S.E.2d at 194 (invalidating an order denying a motion to suppress that was previously granted by another judge in the same action). Judge Morgan squarely held that, as a matter of law, Alliance complied with the charging order when distributing only 10% of proceeds to Orlando as Nelson's creditor. (Order Denying Mot. Civil Contempt ¶ 31.) Orlando presented the same arguments to Judge Morgan on which it premises its claims in this action. Therefore, Orlando is barred from making such a bare collateral attack and pursuing a new finding that clearly contradicts Judge Morgan's order. Because this essential issue governs all of Orlando's claims, they should all be dismissed.

36. Alliance Defendants' Motion to Dismiss Orlando's Claims should be granted for the above reasons. The Court need not then delve into the myriad of additional issues addressed in briefs and arguments, including the internal affairs doctrine, the statute of limitations, res judicata, and the doctrine of issue preclusion.

**B. Orlando's Motion to Amend**

37. Having found that the original Complaint must be dismissed, the Court must next consider whether allowing Orlando to amend its Complaint would command a different result. Orlando seeks leave to amend its Complaint to add a contract claim on the theory that Alliance had a duty to Orlando, as an assignee of Nelson's rights, to pay Orlando the disputed 6.4% once the jury determined that Nelson had ten ownership units in Alliance. (Orlando's Mot. Leave Amend Compl.

3.)  This claim is based on the same facts as the claims asserted in the original Complaint.  (*See* Orlando's Mot. Leave Amend Compl. ¶¶ 10–11.)

38.     The law is settled that the Court could, in its discretion, allow the Motion to Amend, *see Revolutionary Concepts, Inc. v. Clements Walker, PLLC*, 227 N.C. App. 102, 110, 744 S.E.2d 130, 136 (2013) (stating that orders regarding motions to amend a pleading are reviewed for abuse of discretion), but it can also, in its discretion, deny an amendment that would be futile.  *See N.C. Council of Churches v. State*, 120 N.C. App. 84, 94, 461 S.E.2d 354, 360–61 (1995) (affirming denial of a motion to amend as futile where "plaintiff's claims, even as amended, cannot survive [a dispositive motion]").

39.     The Court, in its discretion, finds and concludes that the Amended Complaint would be futile because the new contract claim Orlando seeks to add would be dismissed for the same reason that all claims presented in the initial Complaint must be dismissed.  For the above reasons, and in the Court's discretion, Orlando's Motion to Amend should be denied, Defendants' Motion to Dismiss Orlando's Claims should be granted, and Orlando's Complaint should be dismissed with prejudice.

C.     **Nelson's Right to Assert Claims**

40.     Nelson has filed a motion asking "that he not be identified or treated as a 'nominal' defendant in this action" because he purports that he has an ownership interest in the property at issue since, if Orlando prevails, the additional distributions

that Alliance will be required to make to Orlando will reduce Orlando's judgment against Nelson.[2] (*See* Nelson's Mot. Re Status Nominal Def. ¶ 1.)

41. Alliance Defendants contend that whether Nelson should only be considered a nominal defendant, his crossclaims should be dismissed because they are either not relevant to Orlando's claims or are barred by the statute of limitations or issue preclusion. (Br. Alliance Defs. Regarding Kenneth E. Nelson's Status "Nominal" Def. 3, ECF No. 63.)

42. Nelson asserts crossclaims against Alliance Defendants, some of which are duplicative or appear to be more properly asserted only against Orlando. Most likely out of an abundance of caution, Orlando has moved to dismiss any "crossclaims" against it. (*See* Br. Supp. Mot. Dismiss Pursuant Rules 12(b)(1) & 12(b)(6), ECF No. 34.1.) The Court first notes that, in light of the dismissal of Orlando's claims, none of Nelson's crossclaims are properly before this Court. A related underlying transaction or occurrence is a prerequisite to the bringing of crossclaims. *See* N.C. Gen. Stat. § 1A-1, Rule 13(g).

43. Furthermore, the Eastern District of Wisconsin entered a bill of peace order enjoining Nelson "from filing any further legal actions or claims against Orlando . . . ." *Orlando Residence Ltd. v. GP Credit Co., LLC*, 609 F. Supp. 2d 813, 817 (E.D. Wis. 2009). The Court finds that this order precludes Nelson's right to present claims against Orlando in this action. Accordingly, Nelson's claims against Orlando should be dismissed with prejudice.

---

[2] It is obvious from the face of the record that any Alliance distributions will not approach the amount of the judgments Orlando holds against Nelson.

44. To the extent Nelson's crossclaims are asserted against Alliance Defendants, the Court finds that Nelson's claims for (1) common law conspiracy against Tweeten, (2) statutory conspiracy under Wis. Stat. § 134.01 against Tweeten, (3) conspiracy to slander title against Tweeten, (4) aiding and abetting slander of title against Tweeten, (5) breach of fiduciary duty against Tweeten for freezing Nelson out of Alliance, (6) constructive fraud against Tweeten and Axis, (7) equitable accounting, (8) unjust enrichment, (9) quantum meruit, (10) breach of contract and breach of the duty of good faith and fair dealing against Tweeten, (11) breach of contract and breach of the duty of good faith and fair dealing against Axis, (12) derivative action for constructive fraud against Tweeten and Axis, (13) derivative action for breach of fiduciary duty against Tweeten, (14) breach of fiduciary duty, and (15) constructive fraud, bear no relation to Orlando's claims and so are not properly brought as crossclaims pursuant to Rule 13(g). (*See* Br. Supp. Mot. Dismiss Cross-cls., Strike, More Definite Statement & Entry Appropriate Orders 4–6, ECF No. 32.) The Court notes that Nelson unsuccessfully sought to interject many of these claims or the facts regarding them into the Nelson Action. However, the Court need not wade into the waters of claim preclusion or estoppel to conclude that Nelson's claims are in any event not proper in this action. Rather, those claims are not proper because the right to assert them depends on Orlando's Complaint surviving, which it has not.

45. Nelson's crossclaims, or counterclaims denominated as crossclaims should be dismissed with prejudice, and Nelson's Nominal Defendant Motion should be denied as moot.

**D.     Nelson's Rule 56(f) Motion**

46.     Nelson moves for leave to be heard, and for a Rule 56(f) continuance of Alliance Defendants' Motion to Dismiss Orlando's claims.  His motion is directed not to his own claims, but to Orlando's claims.  (*See* Nelson's B. Supp. Mot. to be Heard & Continuance & Discovery 1, ECF No. 67.)  Orlando, not Nelson, is the proper party to seek a continuance to allow discovery on Orlando's claims against Alliance Defendants.  *See* N.C. Gen. Stat. § 1A-1, Rule 56(f).  Accordingly, Nelson's Rule 56(f) Motion should be denied.

## V.     CONCLUSION

47.     For the foregoing reasons, the Court orders as follows:

a.     Alliance Defendants' Motion to Dismiss Orlando's Claims is GRANTED and Orlando's Complaint is DISMISSED with PREJUDICE;

b.     Orlando's Motion to Amend is, in the Court's discretion, DENIED;

c.     Orlando's Motion to Dismiss Nelson's Crossclaims is GRANTED and all crossclaims against Orlando are DISMISSED with PREJUDICE;

d.     Alliance Defendants' Motion to Dismiss Nelson's Crossclaims is GRANTED and all crossclaims against Alliance Defendants are DISMISSED with PREJUDICE;

e.     Nelson's Nominal Defendant Motion is DENIED;

f.       Nelson's Rule 56(f) Motion is DENIED.


IT IS SO ORDERED, this the 20th day of December, 2018.


                          /s/ James L. Gale
                          James L. Gale
                          Senior Business Court Judge