NORTH CAROLINA COUNCIL OF CHURCHES AND JIMMY CREECH, PLAINTIFFS V. STATE OF NORTH CAROLINA; NORTH CAROLINA DEPARTMENT OF CORRECTION; AND FRANKLIN FREEMAN, IN HIS OFFICIAL CAPACITY, DEFENDANTS

No. 9310SC1162

(Filed 5 September 1995)

**1. Appeal and Error § 175 (NCI4th)— case technically moot— case capable of repetition yet evading review—case not dismissed**

Although this case wherein plaintiffs sought a permit to hold a vigil outside Central Prison prior to the execution of John Gardner would seem to be moot, since John Gardner was executed in 1992, the case is not dismissed because it is one which is "capable of repetition yet evading review."

**Am Jur 2d, Appellate Review § 646.**

N.C. COUNCIL OF CHURCHES v. STATE OF NORTH CAROLINA

[120 N.C. App. 84 (1995)]

2. **Constitutional Law § 115 (NCI4th)— execution vigil— denial of permission to hold on prison property—no denial of free speech rights—no evidence of viewpoint discrimination**

Summary judgment for defendants was proper on plaintiffs' free speech claim under Article I, § 14 of the North Carolina Constitution where plaintiffs claimed that denial of a permit to hold a vigil on a grassy knoll on prison property prior to an execution violated their right to free speech, but defendants acted reasonably in denying plaintiffs access to the grassy knoll, given past disturbances during such vigils, the serious need for prison security at all times but especially during executions, and the proximity of the grassy knoll to the prison. Furthermore, since plaintiffs neither alleged nor offered evidence of any affirmative acts by defendants that could constitute viewpoint discrimination, summary judgment for defendants was proper on this claim as well.

**Am Jur 2d, Consitutional Law §§ 496, 506, 510, 517, 518.**

3. **Trial § 64 (NCI4th)— continuance of summary judgment hearing pending discovery denied—no error**

The trial court did not abuse its discretion in denying plaintiffs' motion to deny summary judgment for defendants or to continue the summary judgment hearing pending further discovery in an action challenging the denial of a permit to hold a vigil on a grassy knoll on prison property during an execution where plaintiffs did not show by affidavit, deposition, or otherwise any facts concerning past prison disruptions or lack of disruptions during execution vigils or the risk of disruptions at plaintiffs' proposed vigil; they did not offer any other evidence to refute the reasonableness of defendants' denial of their permit request; and plaintiffs did not state a claim for viewpoint discrimination.

**Am Jur 2d, Summary Judgment § 12.**

4. **Pleadings § 374 (NCI4th)— amendment of complaint denied—amendment futile—denial proper**

The trial court did not err in denying plaintiffs' second motion to amend their complaint to add claims for viewpoint discrimination and violation of equal protection based on the failure of defendants to interfere with a demonstration by death penalty

proponents on a grassy knoll on prison property without a permit from the Department of Correction, though with a permit from the City of Raleigh, since failure to interfere in itself did not constitute viewpoint discrimination or amount to denial of equal protection, and an amendment amplifying these claims would therefore be futile.

**Am Jur 2d, Pleading § 323.**

Judge GREENE dissenting.

Appeal by plaintiffs from order filed 12 August 1993 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 5 April 1995.

*Patterson, Harkavy & Lawrence, by Burton Craige, for plaintiffs-appellants.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General James Peeler Smith, Special Deputy Attorney General Jacob L. Safron, and Associate Attorney General William McBlief, for defendants-appellees.*

LEWIS, Judge.

On 4 September 1992 plaintiffs, opponents of the death penalty, applied to the North Carolina Department of Administration for a permit to conduct a vigil on the "grassy knoll" near Central Prison in Raleigh during the 24 hours preceding the execution of John Gardner scheduled for 23 October 1992. The grassy knoll, prison property used for vigils in 1984, 1986, and 1991, is located on the north side of Western Boulevard, about 100 yards south of the prison. The permit was denied verbally and this denial confirmed in a 14 September 1992 letter from W.L. Kautzky, Deputy Secretary of Correction, to plaintiff Creech.

On 1 October 1992 proponents of the death penalty obtained a permit from the City of Raleigh to stage a demonstration prior to and during Gardner's execution on the northern right of way of the 1300 block of Western Boulevard. Both plaintiffs and defendants agree that this right of way covers a portion of the grassy knoll. In support of their claim that a State right of way covers part of the grassy knoll, plaintiffs presented an affidavit dated 21 October 1992 by Jimmie L. Beckom, Chief Engineer of the City of Raleigh at that time. Mr.

**N.C. COUNCIL OF CHURCHES v. STATE OF NORTH CAROLINA**

[120 N.C. App. 84 (1995)]

Beckom testified that Western Boulevard and the right of way along Western Boulevard are owned by the State. Defendants claim that the City has authority to regulate picketing on state highways within a municipality and that the State of North Carolina does not regulate such picketing through the Department of Transportation. Neither party disputes the statutory authority of the Department of Correction, pursuant to N.C.G.S. § 148-5, to manage prison property, and the record before us indicates that the grassy knoll is located on prison property.

On 19 October 1992, plaintiffs filed this action for declaratory and injunctive relief to gain access to the grassy knoll prior to and during Gardner's execution. On 21 October 1992 the Court denied plaintiffs' motion for preliminary relief. On 21 October 1992 plaintiffs filed a motion for a preliminary mandatory injunction requiring defendants to grant permission for a vigil on property north of the 1400 block of Western Boulevard. Plaintiffs filed an amended complaint on 21 October 1992. Claiming that the denial of a permit violated their free speech rights under Article I, section 14 of the North Carolina Constitution, plaintiffs, in their amended complaint, prayed for: a declaratory judgment declaring that their rights had been violated, a temporary restraining order or preliminary injunction ordering defendants to permit access prior to and during the execution to the grassy knoll or to the 1400 Western Boulevard site, a permanent injunction precluding defendants from closing the grassy knoll to the public during executions, and attorney fees and costs. On 22 October 1992 the court entered an order allowing plaintiffs access to a site south of Western Boulevard rather than the alternative site requested.

Defendants filed motions to dismiss and for summary judgment. Plaintiffs filed a motion to amend their complaint, seeking to add allegations and claims concerning events that took place after the filing of their first amended complaint. Plaintiffs served their first set of interrogatories and first request for production of documents on 4 June 1993. In response, defendants served a motion for a protective order rather than answering the interrogatories or producing the requested documents. Plaintiffs filed motions to compel discovery, and to deny defendants' motion for summary judgment, or to continue the summary judgment motion, under Rule 56(f), until plaintiffs could conduct discovery. By order filed 12 August 1993, the court denied plaintiffs' motions and granted defendants' motion for summary judgment. Plaintiffs appeal this order.

N.C. COUNCIL OF CHURCHES v. STATE OF NORTH CAROLINA

[120 N.C. App. 84 (1995)]

Plaintiffs assert on appeal that the trial court erred by (1) granting summary judgment to defendants, (2) prematurely hearing the summary judgment motion and denying plaintiffs' Rule 56(f) motion to deny summary judgment or to continue the summary judgment hearing, and denying plaintiffs' motion to compel discovery, and (3) denying plaintiffs' motion to amend their complaint.

We first note that the briefs and record raise an issue as to whether either the State of North Carolina (through the Department of Correction or otherwise) or the City of Raleigh, or both, have the authority to control access to and grant permits for vigils on the grassy knoll, part of which, according to the record, covers the northern right of way of Western Boulevard. Since this issue is not properly before us for review, we do not decide. However, for the purposes of this appeal, we assume that defendants did in fact have authority to issue or deny such a permit.

## Mootness

[1] Defendants contend that this case is moot. The exclusion of moot questions in state court is a principle of judicial restraint. *In re Peoples,* 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978), *cert. denied,* 442 U.S. 929, 61 L. Ed. 2d 297 (1979). Such restraint is applied as follows:

> Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law.

*Id.*

However, even a case which is technically moot will be considered if it satisfies the requirements of the " 'capable of repetition yet evading review' " exception to the mootness doctrine. *See In re Jackson,* 84 N.C. App. 167, 170-71, 352 S.E.2d 449, 452 (1987). This exception applies when:

> (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.

*Crumpler v. Thornburg,* 92 N.C. App. 719, 723, 375 S.E.2d 708, 711 (1989) (quoting *Leonard v. Hammond,* 804 F.2d 838, 842 (4th Cir. 1986)), *disc. review denied,* 324 N.C. 543, 380 S.E.2d 770-71 (1989).

**N.C. COUNCIL OF CHURCHES v. STATE OF NORTH CAROLINA**

[120 N.C. App. 84 (1995)]

Under these facts, defendants' denial of a permit request before an execution could not be fully litigated and appealed. Execution dates established pursuant to N.C.G.S. § 15-194 are set for not less than 60 days nor more than 90 days from the date of the hearing held to set the date of execution. N.C.G.S. § 15-194 (1983). Plaintiffs then have from 60 to 90 days from the date of hearing to seek a permit for their vigil. If the permit is denied, they do not then have time to develop a factual record and obtain plenary review of the denial prior to the execution. Once the execution is held, the case is moot, leaving plaintiffs with no opportunity to fully litigate their claim.

There is also a reasonable expectation that this situation will recur. Plaintiffs have sought to hold such vigils on the grassy knoll at several executions since 1984 and give every reason to believe they intend to hold such vigils at future executions. Given the proximity of the site to the prison and the concern for prison security, it is likely that defendants will deny plaintiffs permits for vigils on the grassy knoll at future executions. Unlike the plaintiff in *Crumpler* whose case did not come within the mootness exception because he could not demonstrate that there was a reasonable expectation that the challenged statute would be unconstitutionally applied to him again, plaintiffs have shown that requests for similar permits may well be denied for future executions. *See Crumpler*, 92 N.C. App. at 724, 375 S.E.2d at 711-12.

Thus, although this case would seem to be moot since John Gardner has been executed, we shall not dismiss it because it is "capable of repetition yet evading review."

(1) Propriety of Summary Judgment on Plaintiffs' Claims

[2] Plaintiffs claim that the denial of the permit for a vigil on the grassy knoll violated their rights of free speech under the North Carolina Constitution which provides in Article I, section 14:

Freedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse.

N.C. Const. Art. I, § 14 (1984). The free speech clause in this section was added in 1971. *See* J. Orth, *The North Carolina State Constitution: A Reference Guide* 51 (1993).

The parties have offered no North Carolina cases on point to suggest how the North Carolina constitutional protection of free speech

applies to the facts of this case and we have not found any. Given this scarcity of case precedent, we turn to factually similar cases decided under the First Amendment to the United States Constitution for guidance. We note the North Carolina Constitution includes the phrase ". . . every person shall be held responsible for their abuse"; the United States Constitution has no equivalent.

Under the First Amendment of the United States Constitution, a state may place reasonable, viewpoint-neutral restrictions on expressive conduct that takes place on publicly owned property that is not a public forum. *Int'l Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. ——, 120 L. Ed. 2d 541, 550 (1992). In a case decided prior to the addition of the 1971 free speech clause to our North Carolina Constitution, our Supreme Court similarly concluded that freedom of speech is not absolute and that a state may place reasonable restrictions on the time and place of expressive activity. *State v. Wiggins*, 272 N.C. 147, 157-58, 158 S.E.2d 37, 45 (1967), *cert. denied*, 390 U.S. 1028, 20 L. Ed. 2d 285 (1968).

Regulations of expressive activity in a public forum, in contrast, must be "narrowly drawn to achieve a compelling state interest." *Int'l Society for Krishna Consciousness, Inc.*, 505 U.S. at ——, 120 L. Ed. 2d at 550. The United States Supreme Court has held that prison property is not a public forum. *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 134-36, 53 L. Ed. 2d 629, 644-45 (1977). Since the grassy knoll is located on prison property, it is not a traditional public forum.

Public property that is not a traditional public forum can attain public forum status only if it qualifies as a designated public forum. *Int'l Society for Krishna Consciousness, Inc.*, 505 U.S. at ——, 120 L. Ed. 2d at 550. A state does not create a designated public forum simply by inaction or by permitting members of the public to visit the property freely. *Id.* at ——, 120 L. Ed. 2d at 551. Rather, the property must be intentionally opened by the state for public discourse. *Id.*

The simple fact that defendants have given limited permission for vigils on the grassy knoll at past executions does not convert the knoll into a forum intentionally opened perpetually for public discourse. *See id.* In fact, the record shows that the Department of Administration refused to grant a permit for a 24 hour vigil on the grassy knoll in January 1992 although remaining willing to consider a permit for a shorter time period similar to the limited time period for which a permit was issued in October 1991.

Since the grassy knoll is not a public forum, regulations on expressive conduct there need only be reasonable and viewpoint-neutral. *See id.* at ——, 120 L. Ed. 2d at 550. Since the grassy knoll is prison property located in close proximity to the prison itself, courts should give appropriate deference to the decision of prison officials in regulating activity on the grassy knoll, particularly preceding and during an execution when prisoners are already likely to become agitated. *See Jones,* 433 U.S. at 125-26, 136, 53 L. Ed. 2d at 638-39, 645.

Although plaintiffs' affidavits indicate that vigil participants have protested peacefully and quietly in past vigils held by plaintiffs, defendants' affidavits show that the inmates have not behaved in such a solemn manner. Defendants present uncontradicted affidavits showing that there were serious inmate disruptions during the 18 October 1991 execution of Michael V. McDougall, and that these disruptions were more intense than those at past executions. Prisoners started fires in the prison, mimicked the candles held by the persons holding the vigil, shouted to those outside, and one prisoner threw a burning object from a prison window. The prison had to reassign and employ additional staff persons to handle the disturbances. Affidavits from both plaintiffs and defendants show that prisoners can easily view the grassy knoll from within the prison. Because of these past disturbances, prison officials testified that increased staffing would be required during the execution if a vigil were held on the grassy knoll. Given the serious need for prison security at all times, especially during a tense time like an execution, and the proximity of the grassy knoll to the prison, defendants acted reasonably in denying plaintiffs access to the grassy knoll during the 23 October 1992 execution of John Gardner. Plaintiffs remained free to obtain and, in fact, did obtain permission to demonstrate on another nearby site. Accordingly, summary judgment for defendants was proper on plaintiffs' free speech claim under Article I, section 14 of the North Carolina Constitution.

Plaintiffs also claim that defendants have discriminated on the basis of viewpoint in denying them a permit. However, this is not a case in which defendants granted the death penalty proponents a permit to demonstrate on the grassy knoll while denying such a permit to plaintiffs. Rather, the death penalty proponents obtained a permit from the City of Raleigh to demonstrate on the right of way of Western Boulevard, part of which covers the grassy knoll. Plaintiffs base their viewpoint discrimination claim solely on the assertion that defendants should have intervened and prevented the death penalty

proponents from demonstrating on the grassy knoll during the execution. We do not see how this lack of intervention alone can constitute viewpoint discrimination. Plaintiffs neither allege nor offer any other facts to show that defendants denied the permit based on either the content of the protest or on plaintiffs' viewpoint. Since plaintiffs have neither alleged nor offered evidence of any affirmative acts by defendants that could constitute viewpoint discrimination, we hold that summary judgment for defendants was proper on this claim.

### (2) Denial of Plaintiff's Rule 56(f) and Rule 37(a) Motions

**[3]** Plaintiffs claim that summary judgment was premature and that the court erred in denying their motion to continue the summary judgment hearing pending further discovery. Plaintiffs also assert that the court erred in denying their Rule 37(a) motion to compel discovery.

Plaintiffs served their first set of interrogatories and their first request for production of documents two months prior to the date scheduled for the summary judgment hearing. Defendants moved for a protective order and refused to respond to plaintiffs' discovery requests. Plaintiffs then moved to compel discovery, and under Rule 56(f) to deny summary judgment or to continue the summary judgment hearing pending further discovery. In their Rule 56(f) request and supporting affidavit, plaintiffs claimed that they were unable to respond adequately to defendants' summary judgment motion because they had not yet obtained discovery from defendant concerning (1) the risk of prison disruption during execution vigils and (2) facts relevant to plaintiffs' viewpoint discrimination claim.

A trial court is not barred in every case from granting summary judgment before discovery is completed. *Evans v. Appert*, 91 N.C. App. 362, 367-68, 372 S.E.2d 94, 97, *disc. review denied*, 323 N.C. 623, 374 S.E.2d 584-85 (1988). Further, the decision to grant or deny a continuance is solely within the discretion of the trial judge and will be reversed only when there is a manifest abuse of discretion. *Id.* at 368, 372 S.E.2d at 97.

Here, we hold it was not an abuse of discretion for the trial judge to refuse to grant a continuance or deny summary judgment under Rule 56(f). Plaintiffs have not shown by affidavit, deposition or otherwise, any facts concerning past prison disruptions, or lack of disruptions, during execution vigils or the risk of disruptions at plaintiffs' proposed vigil. They also have not offered any other evidence to refute the reasonableness of the defendants' denial of their permit

request. In addition, since plaintiffs' allegations do not state a claim for viewpoint discrimination, the court also did not abuse its discretion in denying the Rule 56(f) motion as to this claim.

Since summary judgment was proper on the materials presented at this stage of the proceedings, we need not further address plaintiffs' assertion that the court erred by refusing to compel discovery.

### (3) Denial of Motion to Amend

[4] In seeking to amend their complaint a second time, plaintiffs sought to add claims for damages, to add additional factual allegations supporting their claim for viewpoint discrimination, and to assert a cause of action for violation of equal protection of the law under Article I, section 19 of the North Carolina Constitution. Plaintiffs assert that this amendment was needed to cover events occurring and claims arising after the filing of their first amended complaint.

Plaintiffs made their motion under Rule 15(a) of the North Carolina Rules of Civil Procedure. Under this rule, after a complaint has been amended once, it may be amended subsequently "only by leave of court or by written consent of the adverse party." N.C.G.S. § 1A-1, Rule 15(a) (1990). Rule 15(a) further provides that leave to amend "shall be freely given when justice so requires." *Id.* The denial of a motion to amend is reviewed for clearly shown abuse of discretion. *House of Raeford Farms v. City of Raeford,* 104 N.C. App. 280, 282, 408 S.E.2d 885, 887 (1991). When an amendment would be futile in light of the propriety of summary judgment on a plaintiff's claim, it is not an abuse of discretion for the trial court to deny the amendment. *Olive v. Williams,* 42 N.C. App. 380, 388, 257 S.E.2d 90, 96 (1979).

The claims plaintiffs seek to add for viewpoint discrimination and violation of equal protection are based on the failure of defendants to interfere with the demonstration by the death penalty proponents on the grassy knoll without a permit from the Department of Correction, though with a permit from the City of Raleigh. Since we have held that this failure to interfere in itself does not constitute viewpoint discrimination, an amendment amplifying this claim would be futile. Plaintiffs' attempt to add an equal protection claim based solely on this failure to interfere is also futile. We find no constitutional violation in the defendants' inaction toward the proponent's exercising their permit from the City to be on the grassy knoll. Since we have

held that the actions of defendants in denying the permit did not violate the freedom of speech guarantee set forth in Article I, section 14 of the North Carolina Constitution, an amendment to add a claim for damages for this violation would also be futile.

The trial court did not abuse its discretion in denying the motion to amend. Even if we treat the motion to amend as a Rule 15(d) motion to serve supplemental pleadings, as requested by plaintiffs, the proposed changes would still be futile since plaintiffs' claims, even as amended, cannot survive summary judgment.

For the reasons stated, the Final Order of the Court granting summary judgment to defendants and denying plaintiffs' motions is affirmed in all respects.

Judge WALKER concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I disagree with the majority's opinion that the court correctly denied plaintiffs' motion for an extension of time under Rule 56(f).

I agree with the majority that the grassy knoll is not a public forum and that restrictions of expressive conduct on this public property can occur if the restrictions are reasonable and viewpoint-neutral. *Krishna Society*, 505 U.S. at —, 120 L. Ed. 2d at 550; *Wiggins*, 272 N.C. at 147-58, 158 S.E 2d at 37-45. I also agree that the trial court, as a general rule, is not required to wait until discovery is completed before entering summary judgment. *Evans v. Appert*, 91 N.C. App. 362, 368, 372 S.E.2d 94, 97, *disc. rev. denied*, 323 N.C. 623, 374 S.E.2d 584 (1988). In those instances, however, where the uncompleted discovery relates to facts the movant asserts in support of the summary judgment motion and the party opposing the motion does not otherwise have access to the facts, the summary judgment motion should be continued "to permit . . . discovery to be had." N.C.G.S. § 1A-1, Rule 56(f) (1990). This is especially so when the facts are within the sole control of the movant. *Joyner v. Wilson Memorial Hosp.*, 38 N.C. App. 720, 723, 248 S.E.2d 881, 882 (1978).

In this case, whether the restriction on the use of the grassy knoll was reasonable depends in large part on whether previous vigils on the grassy knoll caused serious disruptions within the prison. Indeed,

the majority determines that the denial of the permit was reasonable on the basis of "past disturbances" within the prison. The defendants presented affidavits showing that the previous vigils on the grassy knoll caused serious disruptions within the prison. This was information peculiarly within the control of the defendant. The plaintiffs requested a continuance of the summary judgment hearing in order to pursue discovery of whether previous vigils had caused any disruptions within the prison. In support of their motion under Rule 56(f), plaintiffs submitted the affidavit of their attorney, William G. Simpson, Jr. His affidavit stated in pertinent part:

> 5. Plaintiffs seek to establish that the supposed risk of disruption within Central Prison did not justify denying plaintiffs' request for access to the "grassy knoll" during the time of John Gardner's execution.

> . . . .

> 10. The discovery requests filed by plaintiff seeks [sic] evidence that is relevant to defendants' motion for summary judgment. In particular, plaintiffs seek information concerning the supposed risk of disruption purportedly relied upon by defendants to deny plaintiffs request for a permit. Plaintiffs also seek information and materials relevant to their claim of viewpoint discrimination.

The trial court denied the plaintiffs' request for continuance, denied their request for discovery and entered summary judgment for the defendant.

It is true, as the majority states, that the "[p]laintiffs have not shown by affidavit, deposition or otherwise, any facts concerning past prison disruptions . . . ." Although they have not done so and may not be able to do so, they are entitled to an opportunity to discover if any such evidence exists. For these reasons the trial court erred in denying plaintiffs' Rule 56(f) motion to continue the summary judgment hearing and their motion seeking discovery. The entry of summary judgment must therefore be vacated as it was premature. On remand the plaintiffs should be permitted reasonable discovery and then a new hearing on defendants' summary judgment motion.