IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-96

Filed 3 September 2024

Durham County, No. 22 CVD 3028

DURHAM COUNTY DEPARTMENT
OF SOCIAL SERVICES, Petitioner,

v.

AMANDA SHENELLE WALLACE, Respondent.

Appeal by Respondent from order entered 24 August 2022 by Judge James T. Hill in Durham County District Court.  Heard in the Court of Appeals 7 June 2023.

*Stam Law Firm, PLLC, by R. Daniel Gibson, for the respondent-appellant.*

*Teague Campbell, Dennis & Gorham, L.L.P., by Patrick J. Scott, Natalia Isenberg and Jacob H. Wellman, for the petitioner-appellee.*

*The ACLU of North Carolina Legal Foundation, by Samuel J. Davis, Kristi L. Graunke, and Muneeba S. Talukder, amicus curiae.*

STADING, Judge.

Respondent Amanda Wallace appeals from a civil no-contact order entered pursuant to the Workplace Violence Prevention Act.  N.C. Gen. Stat. §§ 95-260 to -271 (2023).  After carefully reviewing the trial court's no-contact order, we hold that its findings of fact are insufficient to permit meaningful appellate review and thus vacate and remand the order for further proceedings.

## I.    Background

Respondent previously worked as a child abuse and neglect investigator for Petitioner Department of Social Services ("DSS") in Durham, North Carolina. Dissatisfied with DSS's child-placement policies, Respondent pursued external advocacy.   She founded an organization, Operation Stop Child Protective Services ("Operation Stop CPS"), purporting to "be a solution, to give families a voice and empower them to be able to speak out about what's going on."  Operation Stop CPS maintained a social media presence, rallied against DSS's policies, and protested against DSS.

Respondent was involved with many of these protests against what she terms "the kidnapping of children in Durham County."  She also led these protests near DSS's office at the intersection of East Main Street and Queen Street in Durham. Respondent and at least two of her fellow Operation Stop CPS advocates protested near the personal residence of the Durham DSS Director on 24 May 2022 and 13 August 2022.  As a result of these protests, DSS employees began to express concerns about their personal safety and that of their family members.

In response to these concerns, on 16 August 2022, Petitioner filed a complaint for a civil no-contact order on behalf of itself and its employees to enjoin Respondent "and her followers" from contacting either party at their office or home under North Carolina's Workplace Violence Prevention Act (the "WVPA" or "Act").  N.C. Gen. Stat. §§ 95-260 to -271.  The complaint's allegations focused on protests near DSS's office

and an employee's house, as well as social media posts and text messages sent to Petitioner's employees by Operation Stop CPS advocates.

The trial court granted Petitioner's motion for a temporary *ex parte* no-contact order and, on 24 August 2022 conducted a hearing on whether to make the no-contact order permanent. The trial court heard from multiple witnesses whom Respondent cross-examined. After the hearing, the trial court found that Respondent's actions constituted harassment and issued a permanent no-contact order. In this order, the trial court documented the following findings of fact:

- Respondent and her followers have regularly appeared and protested on E[ast] Main [and] Queen St[reet] at DSS offices[;]
- Respondent and her followers have appeared at the personal residence of [the Durham DSS Director] and harassed and intimidated [him;]
- [A named social worker] received no less than 300 text messages [on] July 27—28 [2022] from 7:43 PM—2 AM complaining of her handling of DSS cases[;]
- [The Durham DSS Director] and DSS employees are fearful[; and]
- All other facts allege[d] in [the] petition are incorporated herein[.]

As a conclusion of law, the trial court held that Respondent committed "unlawful conduct" under N.C. Gen. Stat. § 95-264 (2023), but would still "be allowed to peacefully protest." The no-contact order also directed Respondent to:

- [N]ot visit, assault, molest, or otherwise interfere with the employer or the employer's employee at the employer's workplace or otherwise interfere with the employer's operations[;]

- 3 -

- [C]ease stalking the employer's employee at the employer's workplace[;]
- [C]ease harassment of the employer or the employer's employee at the employer's workplace[;]
- [N]ot abuse or injure the employer, including employer's property, or the employer's employee at the employer's workplace[;]
- [N]ot contact by telephone, written communication, or electronic means the employer or the employer's employee at the employer's workplace.

The no-contact order further decreed that "Respondent and her followers" must:

- [B]e allowed to peacefully protest[;]
- [R]emain no less than [twenty-five] feet from the employee entrance and the main entrance of DSS while protesting[;]
- [N]ot use any voice amplification devices[;]
- [N]ot yell or chant when minor children are leaving the building when they appear to be exercising DSS supervised visitation.

Following its entry, Respondent timely appealed the no-contact order.

## II.    Jurisdiction

This Court has jurisdiction to consider Respondent's appeal of the trial court's no-contact order because it is a "final judgment of a district court in a civil action." N.C. Gen. Stat. § 7A-27(b)(2) (2023).

## III.    Analysis

Although Respondent timely objected to Petitioner's standing at trial, she abandoned the issue with this Court because she raised it only in her reply brief.

*McLean v. Spaulding*, 273 N.C. App. 434, 441, 849 S.E.2d 73, 79 (2020) (citing N.C. R. App. P. 28(b)(6)). Further, because Respondent did not "present to the trial court a timely request, objection, or motion" that clearly and specifically "state[d] the grounds for the ruling [she] desired the court to make," she also abandons her right-to-petition claim. N.C. R. App. P. 10(a)(1). Thus, Respondent presents four preserved issues on appeal:

(1) Whether the statutory meaning of "harassment . . . directed to a specific person" under N.C. Gen. Stat. §§ 14-377.3A(b)(2) (2023) and 95-260(3)(b) (2023) includes these repeated text messages to an employee and social media posts about Petitioner;

(2) Whether a no-contact order in response to Respondent's "harassment" requires an express finding of fact that she acted "with the intent to place the employee in reasonable fear" of their safety under N.C. Gen. Stat. § 95-260(3)(b);

(3) Whether N.C. Gen. Stat. § 95-264 grants a trial court authority to enjoin non-parties; and

(4) Whether the no-contact order's prohibition of noise-amplification devices, protesting within twenty-five feet of DSS's office, or yelling violates Respondent's freedom of speech under the United States and North Carolina Constitutions.

This Court reviews a trial court's record for "competent evidence that supports the trial court's findings of fact" and the propriety of its "conclusions of law . . . in light of such facts." *DiPrima v. Vann*, 277 N.C. App. 438, 442, 860 S.E.2d 290, 293 (2021). Those conclusions of law are reviewed *de novo*. *Id.*

## A. The WVPA's Statutory Meaning

First, Respondent argues that the trial court's no-contact order violates the statutory requirements of the WVPA's own language because the text messages and

social media posts do not meet the Act's statutory definition of "harassing." *See* N.C. Gen. Stat. § 95-260 (2023) (incorporating by reference the definition of "harassment" found in N.C. Gen. Stat. § 14-277.3A(b)(2) (2023)); *see also Ramsey v. Harman*, 191 N.C. App. 146, 150, 661 S.E.2d 924, 927 (2008). A trial court may issue a civil no-contact order upon a finding that an "employee has suffered unlawful conduct committed by" a respondent. N.C. Gen. Stat. § 95-264(a). In addition to several statutory elements not at issue here, this "unlawful conduct" includes a catch-all element of "otherwise harassing [conduct], as defined in [N.C. Gen. Stat. §] 14-277.3A. . . ." *Id.* § 95-260(3)(b).

In this context, civil harassment constitutes five relevant elements: (1) knowing conduct (2) directed at (3) a specific person (4) that torments, terrorizes, or terrifies, and (5) serves no legitimate purpose. *Id.* § 14-277.3A(b)(2). Absent a controlling statutory definition, this Court otherwise interprets statutory text according to its ordinary meaning "understood at the time of the law's enactment at issue." *Birchard v. Blue Cross & Blue Shield of N.C., Inc.*, 283 N.C. App. 329, 333, 873 S.E.2d 635, 638 (2022) (citation omitted). Respondent does not address the fourth element's meaning on appeal, nor do we. Contrary to Respondent's argument, for the reasons below, we hold that the text messages and social media posts meet the Act's statutory definition of "harassment."

### 1. *Knowledge & Specificity*

"Knowing conduct" and "specific person" are statutorily undefined but reasonably ascertainable in this context. N.C. Gen. Stat. § 14-277.3A(b)(2). "Knowing" describes the required *mens rea* for civil harassment here. *See Knowing*, *Black's Law Dictionary* (12th ed. 2024) (defining as a "[d]eliberate" or "conscious" action). Respondent acknowledged that she sought to engage in community advocacy by "protest[ing] the kidnapping of children of Durham County." Respondent at least knowingly intended to advocate for certain causes and deliberately acted in furtherance of her objective by taking those actions which Petitioner sought to have enjoined.

"Specific person" similarly refers to Petitioner and its employees. In any event, the order listed two specific employees. Most of the texts and social media posts in the record did explicitly relate to or involve particular named DSS employees—the Durham DSS Director and a specific social worker named in the no-contact order. *See Specific*, *Black's Law Dictionary* (12th ed. 2024) (defining "specific" as "[o]f, relating to, or designating a particular or defined thing."). Whether Respondent's intentional advocacy and the specific people involved rose to sanctionable harassment is a separate question for the factfinder to determine. *Duke v. Xylem, Inc.*, 284 N.C. App. 282, 286, 876 S.E.2d 761, 764 (2022) ("It is a long-standing principle of appellate law that appellate courts 'cannot find facts.'"). Thus, we hold that Respondent's

conduct here accords with the ordinary meaning of the "knowing conduct" and "specific person" elements of N.C. Gen. Stat. § 14-277.3A(b)(2).

## 2. Direction

Although the term "directed at" also is statutorily undefined, our case law indicates that "directed at" or "directed to" involves an action personally undertaken by one person in relation to another. In *State v. Wooten*, 206 N.C. App. 494, 498, 696 S.E.2d 570, 574 (2010), this Court upheld a stalking conviction in part because the defendant included personalized mailing and telephone information on his harassing faxes to identify the victim as their "directed" recipient. This Court upheld another stalking conviction on similar grounds in *State v. Van Pelt*, 206 N.C. App. 751, 754–55, 698 S.E.2d 504, 506 (2010), when it affirmed the trial court's finding that the defendant "directed" repeated messages and notes by specifically identifying the victim to his employees as the intended recipient.

The passive voice used in § 14-277.3A(b)(2)'s text,[1] however, allows for another equally reasonable interpretation: whether a respondent can "direct at" a victim the harassing conduct of a *third party*. Both parties frame their arguments around whether Respondent *directed* third parties' texts and social media posts *at* those employees. A statute with multiple reasonable interpretations—such as subsection

---

[1] *See generally* Bryan A. Garner with Jeff Newman & Tiger Jackson, *The Redbook: A Manual on Legal Style* § 29.3(b), at 605 (5th ed. 2023) ("Omitting [an implied subject from a statutory sentence] leads to . . . the *truncated passive*—often the source of inexplicit ambiguity in governmental prescriptions.").

(b)(2) here—is subject to judicial construction. *Visible Props., LLC v. Vill. of Clemmons*, 284 N.C. App. 743, 754, 876 S.E.2d 804, 813 (2022). Although we have not yet addressed the plain meaning of this specific statutory phrase, reading the proscription in its grammatically logical orientation allows for a straightforward analysis.

The WVPA sanctions unlawful conduct committed by the respondent defined for our purposes as a willful act of harassing conduct. N.C. Gen. Stat. §§ 95-260(3)(b), -264(a). The incorporated § 14-277.3A provision defines "harassment" as "[k]nowing conduct . . . directed at a specific person that torments, terrorizes, or terrifies that person and serves no legitimate purpose." *Id.* § 14-277.3A(b)(2). That said, all but one legal definition of "direct" as a verb that we have found expressly contemplate one person orienting or otherwise influencing another person's actions towards a specific outcome. *See Direct*, *Black's Law Dictionary* (12th ed. 2024) ("*vb.* (14c) 1. To *aim* (something or *someone*). 2. To *cause* (something or *someone*) to *move on a particular course*. 3. To *guide* (something or *someone*); to govern. 4. To *instruct* (*someone*) with authority. 5. To address (something or *someone*).") (italicized emphases added). Thus, this Court holds, as a question of law, that the ordinary meaning of Paragraph (2)'s "direct at" element also implicates Respondent's direction of third parties towards a targeted employee.

### 3. *Legitimacy*

N.C. Gen. Stat. § 95-260 sheds light on § 14-277.3A(b)(2)'s meaning of "legitimate" with its own element of "legal purpose." N.C. Gen. Stat. § 95-260. Our precedents discussing this element inform our understanding here. In *St. John v. Brantley*, 217 N.C. App. 558, 563, 720 S.E.2d 754, 758 (2011) (citing § 14-277.3A(b)(2)), this Court upheld the trial court's finding that the defendant's actions to discourage the plaintiff from testifying in a pending court case were for a "criminal purpose" and "without any legitimate purpose." In *Keenan v. Keenan*, 285 N.C. App. 133, 140, 877 S.E.2d 97, 103 (2022) (citing § 14-277.3A(b)(2)), this Court also upheld the trial court's finding that the defendant ex-husband's single instance of "passive-aggressive" trespass to mow his ex-wife's lawn "did not serve a legitimate purpose" and thus constituted civil harassment. Since the trial court found Respondent "intimidated" the Durham DSS Director, case law supports its conclusion that this is not a "legitimate purpose." Numerous text messages sent within a short timeframe could also be considered for an illegitimate purpose. Yet, we must still review the sufficiency of the underlying findings of fact.

## B. No-Contact Order

Second, Respondent argues that the trial court erred by: (1) not expressly finding that Petitioner had "suffered unlawful conduct committed by" Respondent; and (2) purporting to enjoin her "followers" without constitutional or jurisdictional authority. N.C. Gen. Stat. § 95-264(a). We review a trial court's findings of fact only

to determine whether they competently support the conclusions of law undergirding the judgment. *See DiPrima*, 277 N.C. App. at 442, 860 S.E.2d at 293.

### *1. Findings of Fact*

When acting as the sole factfinder, a trial court must state the specific findings of fact on which it bases its conclusions of law. *See* N.C. R. Civ. P. 52(a)(1). A trial court must expressly document this specific intent, not merely imply it for this Court to infer. *See St. John*, 217 N.C. App. at 562, 720 S.E.2d at 757 ("[A] civil no-contact order requires findings of fact that show . . . the defendant's harassment was accompanied by . . . specific intent." (quotation omitted)); *see also DiPrima*, 277 N.C. App. at 443, 860 S.E.2d 294 (Rejecting the argument "that such a finding can be inferred from the trial court's other findings" because "our holdings in *Ramsey* and *St. John* [make clear] that such a finding must be specifically made, not inferred.").

In *Ramsey*, 191 N.C. App. 146, 661 S.E.2d 924, this Court interpreted near-identical statutory language and schema, N.C. Gen. Stat. §§ 50C-1 to -11 (2007).[2] The

---

[2] North Carolina's jurisprudence on civil no-contact orders focuses on Chapter 50C of our General Statutes, which parallels the WVPA's statutory framework. *See* Act of 17 August 2004, ch. 50C, 2003 N.C. Sess. Laws 2004-194 (codified at N.C. Gen. Stat. §§ 50C-1 to -11), https://www.ncleg.gov/enactedle gislation/sessionlaws/pdf/2003-2004/sl2004-194.pdf. *See generally DiPrima v. Vann*, 277 N.C. App. 438, 860 S.E.2d 290(2021); *Francis v. Brown*, No. COA21-466, 872 S.E.2d 182 (N.C. App. 17 May 2022) (unpublished table decision).

For example, Chapters 50C and 95 both require "intent to place" either a person or an employee, respectively, "in reasonable fear for the[ir] safety." *Compare* N.C. Gen. Stat. § 95-260, *with id.* § 50C-1(6). The General Assembly further synthesized these two protective order chapters by incorporating the same § 14-277.3A "harassment" definition into their respective provisions. *See* Act of 5 June 2009, chs. 50C, 95, secs. 6–7, 2009 N.C. Sess. Laws 2009-58 (amending N.C. Gen. Stat. § 50C-1(6); then amending N.C. Gen. Stat. § 95-260(3)(b)), https://www.ncleg.gov/enactedlegislation/sessionlaws/pdf/2009-2010/sl2009-58.pdf.

Court held that statutory "stalking" requires discrete findings of harassment as defined in N.C. Gen. Stat. § 14-277.3(c) (2007), "accompanied by the *specific intent*" to engage in one of two statutory acts. *Ramsey*, 191 N.C. App. at 148–49, 661 S.E.2d at 925–26 (emphasis added) (quoting § 50C-1(6)). The analogously "unlawful conduct" at issue here requires discrete findings of harassment, as defined in N.C. Gen. Stat. § 14-277.3A, "without legal purpose and with the *intent* to place the employee in reasonable fear for the employee's safety." N.C. Gen. Stat. § 95-260 (emphasis added).

Here, the trial court documented in its no-contact order Respondent's protests at DSS's main office and the personal residence of an employee. It also found that "Respondent and her followers . . . intimidated" the DSS Director. Furthermore, it found that the named social worker received text messages numerous enough to make the social worker and her coworkers "fearful." But other than incorporating the facts alleged in the petition, the trial court omitted any findings concerning the content of the "harass[ment] and intimidat[ion]." The facts alleged in the petition may be sufficient to support the claim; however, the trial court did not expressly document them in its order. *See DiPrima*, 277 N.C. App. at 443, 860 S.E.2d at 294. Absent those findings, we cannot review whether Respondent's conduct served a "legitimate purpose" or specific intent to "torment, terrorize, or terrif[y]" Petitioner's employees— relevant elements of the harassment statute at issue. N.C. Gen. Stat. § 14-277.3A(b)(2). Because the trial court did not make specific findings of fact about this

conduct, we remand this matter to the trial court with instructions to make specific findings of fact to arrive at its conclusion of law of whether Respondent engaged in the "unlawful conduct" of "harassment" under N.C. Gen. Stat. §§ 14-277.3A(b)(2) and 95-260(3)(b). The trial court also did not identify the source of the numerous text messages; it merely found that the social worker received them. For this reason, we must also remand the order for the trial court to determine who sent these messages, if it is able to do so, thereby permitting meaningful appellate review.

## 2. *Injunction*

Respondent asserts that the no-contact order against her "followers" violates her constitutional right to due process. Petitioner suggests that Respondent lacks standing to raise this claim. However, both are mistaken. The trial court cannot enforce its no-contact order against these non-parties—the "followers"—because it failed to identify them. As discussed above, this Court can only review those conclusions of law supported by findings of fact. Here, the trial court did not identify any "followers" to enjoin in the order. Our courts have long voided injunctions "affecting [the] vested rights" of non-parties who lack any identifiable relationship to the parties or any notice of the proceedings. *Buncombe Cnty. Bd. of Health v. Brown*, 271 N.C. 401, 404, 156 S.E.2d 708, 710 (1967) (quoting *Card v. Finch*, 142 N.C. 140, 144, 54 S.E. 1009, 1010 (1906)); *see Ferrell v. Doub*, 160 N.C. App. 373, 378, 585 S.E.2d 456, 459 (2003). Thus, we vacate the portion of the trial court's injunction against Respondent's undetermined and unnamed "followers."

### C. Constitutional Rights

Third, Respondent argues that the no-contact order violates her State Article One and Federal First Amendment rights to speak freely and petition the government. *See* N.C. Const. art. I, §§ 12, 14; U.S. Const. amend. I, cls. 3, 6. We base our analysis of Respondent's rights under North Carolina's Article I, § 14 on an articulation of preexisting federal Free Speech Clause jurisprudence. U.S. Const. amend. I, cl. 3.

The Free Speech Clause of our State Constitution guarantees the citizens of North Carolina the freedom of speech as one "of the great bulwarks of liberty. . . ." N.C. Const. art. I, § 14, cl. 1. The adjacent Responsibility Clause expresses what the federal First Amendment only implies: that "every person shall be held responsible for . . . abus[ing]" his or her free-speech rights.[3] *Id.* art. I, § 14, cl. 3. These Clauses collectively mirror their federal counterpart in jurisprudence and enforcement. *See State v. Petersilie*, 334 N.C. 169, 184, 432 S.E.2d 832, 840–41 (1993). The United States Supreme Court's interpretations of the First Amendment do not bind this Court in interpreting our State's equivalent, though we weigh them heavily in doing so. *Id.* Respondent's outcomes on appeal do not substantively or materially differ depending on her state or federal sources of constitutional free-speech protections.

---

[3] *See Hest Techs. v. State ex rel. Perdue*, 366 N.C. 289, 297–98, 749 S.E.2d 429, 435 (2012) (recognizing that "particular categories of speech [ ] receive no First Amendment protection; these categories include 'obscenity, defamation, fraud, incitement, and speech integral to criminal conduct.'") (quoting *United States v. Stevens*, 559 U.S. 460, 468, 130 S. Ct. 1577, 1584 (2010)).

### *1. Free Speech Claim*

Respondent asserts that the no-contact order violated her right to freedom of speech under North Carolina's Article I, § 14 because the streets and sidewalks outside DSS's office and its employees' homes are "traditional public forums." In *Petersilie*, our Supreme Court adopted federal jurisprudence addressing time, place, and manner ("TPM") restrictions of speech on government-owned property (*i.e.*, a "forum"). 334 N.C. 169, 183, 432 S.E.2d 832, 840 (1993). *See N.C. Council of Churches v. State*, 343 N.C. 117, 468 S.E.2d 58 (1996), *aff'g per curiam,* 120 N.C. App. 84, 90, 461 S.E.2d 354, 358 (1995).

Considering the complex landscape of public-forum jurisprudence and our State courts' careful examination of TPM restrictions to date, we must first summarize the general principles applicable to Respondent's claims. *State v. Bishop*, 368 N.C. 869, 873–74, 787 S.E.2d 814, 817–18 (2016). We review this preexisting First Amendment approach to apply North Carolina's Free Speech and Responsibility Clauses to private speech in public fora.[4] Analyzing the intersection of Article One–First Amendment free-speech rights and government fora requires four inquiries, the first three of which our Supreme Court has already applied in similar cases:

---

[4] The Court in *Petersilie* expressly adopted the entire corpus of federal free-speech jurisprudence to interpret our state Constitution's Article I, § 14 through at least its 1993 disposition. As our current Supreme Court noted, though, "it was unclear how a court should determine" certain threshold questions of the federal public-forum doctrine until the recent decision in *Reed v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218 (2016). *State v. Bishop*, 368 N.C. 869, 818–19, 787 S.E.2d 814, 875–76 (2016) (citing *Reed*, 576 U.S. at 166, 135 S. Ct. at 2228).

(1) Whether the restriction affects protected speech or expressive conduct, *e.g.*, *Hest Techs. v. State ex rel. Perdue*, 366 N.C. 289, 296–97, 749 S.E.2d 429, 434–35 (2012);
(2) If so, whether the restriction is either content-based or content-neutral, *e.g.*, *Bishop*, 368 N.C. at 874, 787 S.E.2d at 818;
(3) If content-neutral, which tier of judicial review below strict scrutiny applies to the restriction, *e.g.*, *id.*; and
(4) Which category of forum the restriction concerns.

### a. Expression, Content, & Scrutiny

The first inquiry is whether the restriction affects either protected speech, inherently expressive conduct, or non-expressive conduct. *See Hest Techs*, 366 N.C. at 296–97, 749 S.E.2d at 434–35. Non-expressive conduct does not raise free-speech concerns. However, restrictions on either of the former two activities implicate constitutionally protected rights that require further inquiry. *See id.*; *Bishop*, 368 N.C. at 874, 787 S.E.2d at 818. Neither party contests Respondent's facially sincere desire to protest DSS's alleged practices. Both parties acknowledge that the no-contact order and its organic statutes, N.C. Gen. Stat. §§ 14-277.3A(b)(2) and 95-264, apply to expressive conduct (*i.e.*, Respondent's protests). Thus, the trial court's effectuation of these statutes through the no-contact order implicates Respondent's constitutional free-speech rights as a question of law.

The second inquiry is whether the restriction is either content-*based* or content-*neutral*. *Bishop*, 368 N.C. at 874, 787 S.E.2d at 818. A content-based speech restriction *prima facie* discriminates against the speech's message, ideas, or subject matter; a content-neutral restriction does not. *State v. Shackelford*, 264 N.C. App.

542, 552, 825 S.E.2d 689, 696 (2018) (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163, 135 S. Ct. 2218, 2226 (2015); then citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 2754 (1989); then citing *Bishop*, 368 N.C. at 872–75, S.E.2d at 817–18). A court may identify this discrimination in the restrictions "plain text of the statute, or the animating impulse behind it, or the lack of any plausible explanation besides distaste for the subject matter or message." *Bishop*, 368 N.C. at 875, 787 S.E.2d at 819. If the restriction is content-based, it is presumptively unconstitutional and must survive strict scrutiny review. *Id.* at 874, 787 S.E.2d at 818. If the restriction is content-neutral, different tiers of judicial scrutiny apply depending on the forum. *Id.* Because Respondent challenges the WVPA only as applied to her, we need not consider the *prima facie* content-neutrality of the Act itself.

The next inquiry is which tier of judicial scrutiny applies to the restriction and the appropriate forum. These tiers of judicial scrutiny apply to speech regulations in descending order of exactness. To satisfy strict scrutiny, the restriction must serve a compelling government interest and be narrowly tailored to effectuate that interest. *Id.* at 876, 787 S.E.2d at 819 (citing *Reed*, 576 U.S. at 163, 135 S. Ct. at 2226); *Hest Techs*, 366 N.C. at 298, 749 S.E.2d at 436. To satisfy intermediate scrutiny's free-speech variant, the restriction must be narrowly tailored to achieve an important or substantial government interest in a manner that allows for ample alternative channels of communication. *See Bishop*, 368 N.C. at 874–75, 787 S.E.2d at 818

- 17 -

(quoting *Ward*, 491 U.S. at 791, 109 S. Ct. at 2753); *Hest Techs*, 366 N.C. at 298, 749 S.E.2d at 436. This particular "regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but [ ] it need not be the least restrictive or least intrusive means of doing so." *Ward*, 491 U.S. at 798, 109 S. Ct. at 2757. Lastly, to satisfy rational basis, the restriction need only rationally further a legitimate state interest. *Hest Techs*, 366 N.C. at 298–99, 749 S.E.2d at 436. Content-neutral restrictions of traditional and designated (collectively, "unlimited") fora are subject to intermediate scrutiny while limited and nonpublic fora restrictions need only have a rational basis. *Id.*

### b. *Forum Categorization*

To determine which level of scrutiny applies, we must determine which of the four forum categories the speech or expressive conduct occurred: (1) a "traditional" public forum, (2) a "designated" public forum, (3) a "limited" public forum, or (4) a "nonpublic" forum. *Christian Legal Soc. Ch. v. Martinez*, 561 U.S. 661, 679 n.11, 130 S. Ct. 2971, 2984 n.11 (2010). Our state courts have described unlimited fora as "quintessential community venue[s], such as a public street, sidewalk, or park." *State v. Barber*, 281 N.C. App. 99, 108, 868 S.E.2d 601, 607 (2021). These opinions have relied on federal Supreme Court precedents that describe a limited public forum as "property that the State has opened for expressive activity by part or all of the public" on a temporary basis, *Int'l Soc. for Krishna Consc. v. Lee*, 505 U.S. 672, 678, 112 S. Ct. 2701, 2705 (1992) (cited by *Council*, 120 N.C. App. at 90, 461 S.E.2d at 358), and

a nonpublic forum as property maintained for a purpose "inconsistent with . . . [or] disrupted by expressive activity." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 804, 105 S. Ct. 3439, 3450 (1985) (cited by *Barber*, 281 N.C. App. at 107–08, 868 S.E.2d at 606–07).

Here, the order's findings provide that "Respondent . . . regularly appeared and protested on E. Main [and] Queen St. at DSS offices and at the personal residence of [the Durham DSS Director]." Resting on those and other findings, the order concluded that Respondent violated the WVPA and decreed that Respondent shall be allowed to peacefully protest no less than twenty-five feet from the DSS office employee entrance without voice amplification devices or yelling when minor children are leaving the building. Respondent does not challenge the *prima facie* constitutionality of the statutes at issue, N.C. Gen. Stat. §§ 14-277.3A, 95-260(3)(b), and 95-264. She instead suggests their application to her through the no-contact order's decrees is unconstitutional.

In its current form, the no-contact order's findings of fact lack sufficient precision, which creates difficulty for judicially scrutinizing forum classification. For example, the order ambiguously points to protesting at DSS's office at the corner of East Main Street and Queen Street in Durham. In any event, presuming this is a "quintessential community venue," the restrictions imposed here pass the appropriate level of scrutiny. *Barber*, 281 N.C. App. at 108, 868 S.E.2d at 607. This is not to say that we hold the places referenced in this order are traditional public

fora. To be certain, protesting on private property, such as a personal residence, is not a protected right under the Federal or State Constitutions. *See State v. Felmet*, 302 N.C. 173, 177, 273 S.E.2d 708, 712 (1981). In this case, we merely employ the most stringent applicable test—intermediate scrutiny—to evaluate whether the restrictions imposed by the trial court pass constitutional muster. *See Bishop*, 368 N.C. at 874–75, 787 S.E.2d at 818.

The plain text of the no-contact order places limitations on Respondent's conduct without consideration of the content. *Id.* at 875, 787 S.E.2d at 819. Since the restrictions are content-neutral, they are permissible regulations of the time, place, and manner of expression, so long as they are narrowly tailored to serve a significant government interest and leave ample alternative channels of communication open. *See Ward*, 491 U.S. at 791, 109 S. Ct. at 2753; *see also Bishop*, 368 N.C. at 874–75, 787 S.E.2d at 818. Protecting employee safety and preventing psychological harm to minor children entering or leaving the building serve a significant government interest. *See Bishop*, 368 N.C. at 877, 787 S.E.2d at 819 (holding protecting children from physical and psychological harm is a compelling interest). The order is narrowly tailored because its restrictions promote this significant government interest and would be achieved less effectively absent the restrictions. *See Ward*, 491 U.S. at 796–99, 109 S. Ct. at 2758 (enumerating the standard for narrow tailoring and addressing limitations such as sound-amplification); *see also Burson v. Freeman*, 504 U.S. 191, 209, 112 S. Ct. 1846, 1857

(1992) (holding that, even under strict scrutiny, a 100-foot boundary may be "perfectly tailored" to achieve the government's interest). Finally, the no-contact order leaves open ample alternative channels of communication, as it specifies that Respondent may still peacefully protest subject to those narrow limitations. Accordingly, this Court holds that the no-contact order at least satisfies intermediate scrutiny and does not violate Respondent's free speech rights under the Federal or State Constitutions.

### 2. *Redress of Grievances*

Respondent asserts that the no-contact order violated her right to petition DSS under the state Application Clause and federal Petition Clause. However, Petitioner correctly points out that Respondent preserved her free-speech claim for appeal but not her right-to-petition claim. *See* N.C. Const. art. I, § 12, cl. 3 (Application Clause); *cf.* U.S. Const. amend. I, cl. 6 (Petition Clause). To properly preserve an issue for review, Respondent must "present[ ] to the trial court a timely request, objection, or motion" that clearly states "the specific grounds for the ruling the party desired the court to make." N.C. R. App. P. 10(a)(1).

Here, Respondent objected at trial only to "freedom of speech on [her] social media" in response to Petitioner's motion to enter certain photographs into evidence. Respondent did not raise otherwise valid right-to-petition claims at any point during the trial or as part of an expressed objection. Article One and First Amendment rights to free speech may very well be "closely intertwined with the right to protest and petition the government." Nonetheless, because Respondent did not raise a request,

objection, or motion regarding the state Application Clause or federal Petition Clause at any point during the trial, this Court holds she did not preserve any constitutional right-to-petition claim for appeal.

## IV. Conclusion

For the reasons above, we vacate the trial court's civil no-contact order and remand it to the trial court for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.

Judges TYSON and MURPHY concur.